UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Kary Diaz MARTINEZ<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>                Respondents. | Docket No.: 25-cv-11613 |

## EMERGENCY MOTION FOR RELEASE FROM DETENTION

Now comes the Petitioner Kary Miriosy Diaz Martinez, and moves this Honorable Court order her release from detention due to the inhumane and cruel conditions of detention at the facility where she is being held.

1. The conditions of detention at the Field Office/Processing Center at Burlington, Massachusetts, do not meet the minimum requirement for humane treatment of detainees and violates the United States Constitution and federal laws. U.S. Const. amend. VIII, *Farmer v. Brennan*, 511 U.S. 825 (1994) (denial of adequate food, clothing, shelter, and medical care, may constitute cruel and unusual punishment); *Helling v. McKinney*, 509 U.S. 25 (1993) (requiring safe and sanitary conditions); *Estelle v. Gamble*, 429 U.S. 97 (1976).

2. The Petitioner is married to a United States citizen. She was arrested on June 3, 2025, at immigration court where she appeared for her scheduled hearing. Her immigration

1

hearing was continued by the Immigration Judge to May 19, 2026. The Petitioner is eligible for relief from deportation and intends to pursue her application to become a permanent residen of the United States. She is eligible to apply for her green card through a process called an I-601A waiver. See e.g. *Calderon Jimenez v. Mayorkas*, 1:18-cv-10225-MLW (settlement agreement relating to eligibility for relief through the I-601A process). Additionally, she is eligible for, and intends to apply for, asylum and related relief.

3. At the time of her arrest, the Petitioner experienced a medical emergency and was taken to Massachusetts General Hospital for treatment. It is not clear whether all of the required medical treatment was rendered or whether her treatment was interrupted by ICE agents as she was shortly taken to the Burlington ICE Field Office/Processing Center the same day.

4. Her husband, who is a citizen of the United States, waited outside the emergency room to see the Petitioner but he was not allowed to do so.

5. Based on the information undersigned counsel gathered, the Petitioner has no criminal record and was never adjudicated to be a danger or a flight risk by the Immigration Court. To the contrary, there was no request by the government attorneys for her detention pending adjudication of her case.

6. The Petitioner is entitled to due process of law under the United States Constitution that guarantees her the right to notice and an opportunity to be heard. The process due to her is the process underway before the immigration court. She dutifully appeared for her hearing to avail herself of the process due to her. The actions of ICE appear intended to circumvent the legal process and deny the Petitioner of her rights guaranteed by the Constitution. There is no apparent reason that would justify her detention. ICE's own

policy calls for an exercise of discretion based on priority, danger to the community and risk of flight. The information posted on ICE's website states the following:

> Detention is non-punitive. Once an alien is transferred to ICE custody, the agency makes a custody determination. ICE uses its limited detention resources to detain aliens to secure their presence for immigration proceedings or removal from the United States — as well as those that are subject to mandatory detention, as outlined by the Immigration and Nationality Act, or those that ICE determines are a public safety or flight risk during the custody determination process.
>
> When an alien is not subject to mandatory detention or is not deemed to be a public safety or flight risk, ICE exercises its discretion in making custody determinations to release aliens with conditions. These custody decisions are made on a case-by-case basis and after considering the totality of circumstances — primarily considering risk of flight, national security threat and risk to public safety.
>
> ICE also takes other factors into consideration — including when an alien has a serious medical condition, is the primary caregiver of minor children, or other humanitarian considerations.
>
> https://www.ice.gov/detain/detention-management

7. The stated reason for detention and monitoring is to ensure the appearance of the individual at the immigration court hearing, which begs the question as to why ICE chooses to make an arrest of an individual who poses no danger to the community or flight risk when she, in fact, appeared for her scheduled hearing as required. The decision to arrest the Petitioner constituted an abuse of discretion and an arbitrary and capricious act designed to deprive the Petitioner of her right to due process.

8. Additionally, it is not clear whether the ICE agents had a warrant to arrest the Petitioner. If they did not, then it would be nearly impossible to establish probable cause for the arrest as ICE's regulations require a finding of probable cause that the individual poses a danger or a flight risk. See *Castañon Nava et al. v. Dep't of Homeland Security et al.*, No. 18-cv-3757-RRP.

3

9. Generally, upon issuance of an ICE warrant, or "reason to believe" that a noncitizen is removable and likely to escape, an ICE agent may detain a noncitizen. The decision, however, is not free from constitutional restrictions. The Fourth Amendment's protections against unreasonable searches and seizures apply to immigration-related arrests and detentions. *United States v. Brignoni-Ponce*, 433 U.S. 873(1975). Thus the "reason to believe" standard for warrantless immigration arrests is the equivalent of probable cause. *Morales v. Chadbourne*, No. 14-1425 (1st Cir. 2015); *United States v. Fidel Quintana*, No. 09-2749 (8th Cir. 2010). The immigration officer must have sufficient facts that would lead a reasonable person to believe, based on the circumstances, that the noncitizen has violated federal immigration laws *and* is likely to escape before an ICE warrant can be obtained. *Maryland v. Pringle*, 540 U.S. 366 (2003).

10. Aside from the legality of the Petitioner's detention, the place and manner of her detention requires immediate action by this Court. The Petitioner's continued detention at the Burlington Field Office/Processing Center violates the United States Constitution and is tantamount to cruel and unusual punishment under the 8th amendment.

11. The Petitioner's detention here is punitive.

12. The Petitioner is denied adequate food, sanitation, a mattress to sleep on, bedding, or basic medical and mental health care.

13. As the attached affidavits establish, the conditions at the Burlington Office are abhorrent.

14. The Petitioner described the conditions of her detention to her immigration attorney as follows:

> When I spoke with Ms. Diaz Martinez on Wednesday, June 4, more than 18 hours after she had been arrested by ICE, she stated that she had only been offered one

4

apple and a small amount of oatmeal. She described conditions at the Burlington field office as "terrible" and "miserable."

Ms. Diaz Martinez described being held in a cell with about 12 other women. She stated that she had to sleep on the floor, with only one "aluminum" blanket which she described as "not even a blanket."

Ms. Diaz Martinez further explained that all of the women in the cell must share one toilet, and there is no privacy to use the toilet as it is in the middle of the cell. She further stated that there is no place to bathe, and it is very cold.

In describing the conditions in detention, Ms. Diaz Martinez was emotional and tearful. She is terrified to return to the Dominican Republic, yet does not know how much longer she can withstand ICE detention.

*See* Exhibit A, affidavit of Attorney Sarah Sherman-Stokes

15. These conditions are not new and appear to be the norm. Another recent female detainee has described suffering similar horrific conditions at the Burlington Field Office. The detainee's attorney has filed an affidavit recounting the details her client provided as follows:

> "Ms. Doe told us that she had not been given access to a shower, nor had she been able to brush her teeth. She said she had been kept in a cell that she described was approximately eight feet by 10 feet. She said there was a toilet in the cell but that there was no barrier between the toilet and anything else in the room, so there was no privacy to use the toilet.
>
> Ms. Doe explained that she wasn't using the bathroom too frequently because she was not eating very much. She said she was given approximately a half-cup of oatmeal in the morning for breakfast, about a half-cup (or five tablespoons) of pasta for lunch, and approximately a half-cup of rice mixed with soup, which she described as having the same consistency as wet dog food, for dinner. To drink, she said she was given three small water bottles each day – one bottle of water with each meal.
>
> Ms. Doe described being very cold and that she was only provided with a mylar blanket (described by her as an aluminum blanket). She said her bones hurt from sleeping on the ground and from being so cold. Ms. Doe said that her husband had been allowed to drop off Tylenol or ibuprofen, but she was only allowed to take two tablets and nothing else. She had not seen a doctor, nor had she received medical care since her arrival at the ICE ERO Burlington Field Office.
>
> She further relayed that she did not have access to soap or water to wash her hands after using the bathroom.

*See* Exhibit B, affidavit of Attorney Alexandra Peredo Carrol. The Petitioner anticipates supplementing this filing with additional affidavits on June 5, 2025.

16. The conditions of detention also violate ICE's own policy and standards. *See* Exhibits C-E. The sad reality at the Burlington ICE detention center rivals those found in some of the most repressive regimes around the world.

17. Whatever legal justification ICE may present for the Petitioner's detention, her continued detention under these conditions is unlawful. The barbaric conditions drastically fall below the minimum standard under the well-established legal precedent. U.S. Const. amend. VIII, *Farmer v. Brennan*, 511 U.S. 825 (1994; *Helling v. McKinney*, 509 U.S. 25 (1993) (requiring safe and sanitary conditions); *Estelle v. Gamble*, 429 U.S. 97 (1976).

18. The Petitioner requires continued medical and mental health care. *See* Exhibit A, affidavit of Attorney Sarah Sherman-Stokes. The lack of access to medical care continues to jeopardize her health and well-being.

19. For the foregoing reasons, the Petitioner requests immediate relief in the form of a release from detention.

                                                Respectfully Submitted
                                                For the Defendant

                                                */s/ Derege B. Demissie*

                                                Derege B. Demissie
                                                DEMISSIE & ASSOCIATES, P.C.
                                                88 Broad Street, Suite 101
                                                Boston, MA 02110
                                                (617) 354-8833
                                                BBO#637544

Dated: June 4, 2025

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2025.

      /s/ *Derege B. Demissie*
      DEREGE B. DEMISSIE