**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Kary Diaz MARTINEZ<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>Respondents. | Docket No.: 25-cv-11613 |

**AFFIDAVIT OF ALEXANDRA PEREDO CARROLL, ESQ.**

I, Alexandra Peredo Carroll, do hereby swear and affirm:

I submit this affidavit in support of Kary Diaz Martinez. The following statements are based on my personal observation or knowledge, except for those statements made on information and belief, as to which I am informed and believe to be true.

1. I am a member in good standing of the Massachusetts bar and immigration co-counsel for an individual who I shall refer to as Jane Doe to protect her privacy. Ms. Doe was detained at Immigration and Customs Enforcement – Enforcement and Removal Operations field office located at 1000 District Avenue; Burlington, Massachusetts from May 27, 2025 until June 2, 2025.

2. Portions of this affidavit conveying factual information I learned from communications with my client; no attorney-client protected legal advice is being disclosed.

3. On May 27, 2025, my client was arrested and detained by agents of U.S. Immigration and Customs Enforcement ("ICE") in the hallway of the Boston Immigration Court in the John F. Kennedy Federal Building, after she appeared before Judge Donovan at a master calendar hearing.

4. On the same day, May 27, 2025, ICE brought Ms. Doe to its Field Office located at 1000 District Avenue, Burlington, Massachusetts; booked her; then placed her in a "hold room" in the Burlington Field Office.

5. On May 29, 2025, at approximately 3 p.m., I visited the Burlington Field Office with my colleague, Jill Seeber, Esq., to see our client Ms. Doe. Attorney Seeber and I identified ourselves to the ICE officer on duty as counsel for Ms. Doe and requested to see her. The officer indicated that ICE does not allow lawyer visitations with clients held at the Burlington Field Office.

6. On May 30, 2025 at approximately 3:50pm, Attorney Seeber and I returned to the Burlington Field Office and were allowed to meet with our client, Ms. Doe, after intervention of an Assistant United States Attorney.

7. Attorney Seeber and I were brought into an interview room where Ms. Doe was already seated and was speaking with another ICE officer. Ms. Doe was crying and was visibly upset and was explaining to the officer that she had pain in her legs and that her legs were swollen. Ms. Doe was shivering and indicated that she was very cold.

8. Attorney Seeber and I were then allowed to meet with Ms. Doe in the interview room, while the ICE officers waited outside.

9. Ms. Doe relayed that she had been sleeping on the floor, without access to a bed or a mattress since the evening of May 27, 2025. She had not been provided with a blanket and was in pain from sleeping on the floor.

10. Ms. Doe further explained that she had recently had surgery and that she had been advised by her doctor that it was important she walk to prevent swelling in her limbs. She showed us that her arms and legs were swollen. She explained that the first night at the facility she had been allowed permission to walk in the hallways but that she had not been allowed to do that again after her first night there.

11. Ms. Doe told us that she had not been given access to a shower, nor had she been able to brush her teeth. She said she had been kept in a cell that she described was approximately eight feet by 10 feet. She said there was a toilet in the cell but that there was no barrier between the toilet and anything else in the room, so there was no privacy to use the toilet.

12. Ms. Doe explained that she wasn't using the bathroom too frequently because she was not eating very much. She said she was given approximately a half-cup of oatmeal in the morning for breakfast, about a half-cup (or five tablespoons) of pasta for lunch, and approximately a half-cup of rice mixed with soup, which she described as having the same consistency as wet dog food, for dinner. To drink, she said she was given three small water bottles each day – one bottle of water with each meal.

13. Ms. Doe described being very cold and that she was only provided with a mylar blanket (described by her as an aluminum blanket). She said her bones hurt from sleeping on the ground and from being so cold. Ms. Doe said that her husband had been allowed to drop off Tylenol or ibuprofen, but she was only allowed to take two tablets and nothing else. She had not seen a doctor, nor had she received medical care since her arrival at the ICE ERO Burlington Field Office.

14. She further relayed that she did not have access to soap or water to wash her hands after using the bathroom.

15. Attorney Seeber and I briefly spoke with one of the ICE officers after our meeting and asked if we could please provide Ms. Doe with a blanket that we had in the car. The officer indicated that they had blankets available and that all Ms. Doe had to do was ask for a blanket if she wanted one. They provided Ms. Doe with a sweatshirt.

16. The following Monday, June 2, 2025 Benjamin Tymann, Esq., Counsel for Ms. Doe in her federal *habeas* case pending in U.S. District Court in the District of Massachusetts met with Ms. Doe at the ICE ERO Burlington Field Office. I was on the phone during that meeting while a paralegal in our office, Jasmine Santos, interpreted for Ms. Doe.

17. During that meeting, Ms. Doe described the conditions of her detention to Attorney Tymann. She relayed that she was still sleeping on the floor that she still did not have access to a bed. She indicated that they were still giving her the same three meals as described above.

18. She stated that she was only given a mylar blanket and not given any other blanket, and that she continued to be extremely cold.

19. Ms. Doe further relayed that at some point over the weekend, two other women were brought into the same small cell that she had been staying in. She said the room was so small that only two of them could lie down on the floor and the third had to be sitting up, next to the toilet. She explained that at approximately 2:00am or 3:00am on Monday, June 2 the women were all moved to a larger cell that held about 10 to 12 other women.

20. She relayed that like the previous cell, the toilet was in the middle of the room, so the women used the aluminum blanket to cover each other as they used the toilet so they could have a little bit of privacy.

21. When we asked additional questions about the conditions of her detention, Ms. Doe indicated that she was nervous about speaking more because there was one ICE officer who had been mistreating her and she was afraid that if she shared more, the conditions would get worse.

22. She further indicated that that same officer had put up her photograph on the door of her cell and that he had told the other officers not to give her anything because she had already been asking for too much. Ms. Doe was noticeably upset when she spoke about this and cried while she was describing the conditions.

Signed under the pains and penalties of perjury, this 4th day of June, 2025,

Alexandra Peredo Carroll

Alexandra Peredo Carroll