# 4.3 Medical Care

## I. Purpose and Scope

This detention standard ensures that detainees have access to appropriate and necessary medical, dental and mental health care, including emergency services.

This detention standard applies to the following types of facilities housing ICE/ERO detainees:

- Service Processing Centers (SPCs);
- Contract Detention Facilities (CDFs); and
- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs, CDFs, and Dedicated IGSA facilities.* Non-dedicated IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

For all types of facilities, procedures that appear in italics with a marked (**) on the page indicate optimum levels of compliance for this standard.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Detainees shall have access to a continuum of health care services, including screening, prevention, health education, diagnosis and treatment.

   ***Medical facilities within the detention facility shall achieve and maintain current accreditation with the National Commission on Correctional Health Care (NCCHC), and shall maintain compliance with those standards.*

2. The facility shall have a mental health staffing component on call to respond to the needs of the detainee population 24 hours a day, seven days a week.
3. The facility shall provide communication assistance to detainees with disabilities and detainees who are limited in their English proficiency (LEP). The facility will provide detainees with disabilities with effective communication, which may include the provision of auxiliary aids, such as readers, materials in Braille, audio recordings, telephone handset amplifiers, telephones compatible with hearing aids, telecommunications devices for deaf persons (TTYs), interpreters, and note-takers, as needed. The facility will also provide detainees who are LEP with language assistance, including bilingual staff or professional interpretation and translation services, to provide them with meaningful access to its programs and activities.

   All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency.

   Oral interpretation or assistance shall be provided to any detainee who speaks another language in which written material has not been translated or who is illiterate.

   Newly-admitted detainees shall be informed orally or in a manner in which the detainee understands about how to access, appeal or communicate concerns about health services.

4. Detainees shall be able to request health services on a daily basis and shall receive timely follow-up.
5. Detainees shall receive continuity of care from

time of admission to time of transfer, release or removal. Detainees, who have received medical care, released from custody or removed shall receive a discharge plan, a summary of medical records, any medically necessary medication and referrals to community-based providers as medically-appropriate.

6. A detainee who is determined to require health care beyond facility resources shall be transferred in a timely manner to an appropriate facility. A written list of referral sources, including emergency and routine care, shall be maintained and updated annually.
7. A transportation system shall provide timely access to health care services that are not available at the facility. Procedures for use of this transportation system shall include: a) prioritization of medical needs; b) urgency (such as the use of an ambulance instead of standard transportation); c) transfer of medical information and medications; and d) safety and security concerns of all persons.
8. A detainee who requires close, chronic or convalescent medical supervision shall be treated in accordance with a written treatment plan conforming to accepted medical practices for the condition in question, approved by a licensed physician, dentist or mental health practitioner.
9. Twenty-four hour emergency medical and mental health services shall be available to all detainees.
10. Centers for Disease Control and Prevention (CDC) guidelines for the prevention and control of infectious and communicable diseases shall be followed.
11. Occupational Safety and Health Administration (OSHA) and applicable state guidelines for managing bio-hazardous waste and decontaminating medical and dental equipment shall be followed.
12. Detainees with chronic conditions shall receive care and treatment, as needed, that includes monitoring of medications, diagnostic testing and chronic care clinics.
13. The facility administrator shall notify ICE/ERO, in writing, of any detainee whose medical or mental health needs require special consideration in such matters as housing, transfer or transportation.
14. Each detainee shall receive a comprehensive medical, dental and mental health intake screening as soon as possible, but no later than 12 hours after arrival at each detention facility. Detainees who appear upon arrival to raise urgent medical or mental health concerns shall receive priority in the intake screening process.
15. Each detainee shall receive a comprehensive health assessment, including a physical examination and mental health screening, by a qualified, licensed health care professional no later than 14 days after entering into ICE custody or arrival at facility. For the purposes of the comprehensive medical examination, a qualified licensed health provider includes the following: physicians, physician assistants, nurses, nurse practitioners, or others who by virtue of their education, credentials and experience are permitted by law to evaluate and care for patients.
16. Qualified, licensed health care professionals shall classify each detainee on the basis of medical and mental health needs. Detainees shall be referred for evaluation, diagnosis, treatment and stabilization as medically indicated.
17. At no time shall a pregnant detainee be restrained, absent truly extraordinary circumstances that render restraints absolutely necessary.
18. Detainees experiencing severe, life-threatening intoxication or withdrawal symptoms shall be transferred immediately for either on-site or off-site emergency department evaluation.

19. Pharmaceuticals and non-prescription medicines shall be secured, stored and inventoried.
20. Prescriptions and medications shall be ordered, dispensed and administered in a timely manner and as prescribed by a licensed health care professional. This shall be conducted in a manner that seeks to preserve the privacy and personal health information of detainees.
21. Health care services shall be provided by a sufficient number of appropriately trained and qualified personnel, whose duties are governed by thorough and detailed job descriptions and who are licensed, certified, credentialed and/or registered in compliance with applicable state and federal requirements.
22. Detention and health care personnel shall be trained initially and annually in the proper use of emergency medical equipment and shall respond to health-related emergency situations.
23. Information about each detainee's health status shall be treated as confidential, and health records shall be maintained in accordance with accepted standards separately from other detainee detention files and be accessible only in accordance with written procedures and applicable laws. Health record files on each detainee shall be well organized, available to all practitioners and properly maintained and safeguarded.
24. Informed consent standards shall be observed and adequately documented. Staff shall make reasonable efforts to ensure that detainees understand their medical condition and care.
25. Medical and mental health interviews, screenings, appraisals, examinations, procedures and administration of medication shall be conducted in settings that respect detainees' privacy in accordance with safe and/orderly operations of the facility.
26. A detainee's request to see a health care provider of the same gender should be considered; when not feasible, a same-gender chaperone shall be provided. When care is provided by a health care provider of the opposite gender, a detainee shall be provided a same-gender chaperone upon the detainee's request.
27. Detainees in Special Management Units (SMUs) shall have access to the same or equivalent health care services as detainees in the general population, as specified in standard "2.12 Special Management Units."
28. ***Adequate space and staffing for the use of services of the ICE Tele-Health Systems, inclusive of tele-radiology (ITSP) and tele-medicine, shall be provided.*
29. All detainees shall receive medical and mental health screenings, interventions and treatments for gender-based abuse and/or violence, including sexual assault and domestic violence.
30. This standard and the implementation of this standard will be subject to internal review and a quality assurance system in order to ensure the standard of care in all facilities is high.

## III. Standards Affected

This detention standard replaces "Medical Care" dated 12/2/2008.

## IV. References

American Correctional Association, *Performance-based Standards for Adult Local Detention Facilities*, 4th Edition: 4-ALDF-2A-15, 4C-01 through 4C-31, 4C-34 through 4C-41, 4D-01 through 4D-21, 4D-23 through 4D-28, 2A-45, 7D-25.

American College of Obstetricians and Gynecologists, *Guidelines for Women's Health Care* (3rd edition. 2007); "Special Issues in Women's Health" (2005).

American Public Health Association *Standards for*

*Health Services in Correctional Institutions*, *Health Services for Women*.

Centers for Disease Control and Prevention website, www.cdc.gov (for the most current guidelines and recommendations on tuberculosis case management and control, HIV management, health care acquired infections, infection control, influenza management, respiratory protection, infectious diseases of public health significance, emerging infectious diseases, and correctional health)

United States Department of Health and Human Services, HIV Clinical Guidelines Portal, http://aidsinfo.nih.gov/Guidelines/default.aspx (for the most current national guidelines on HIV Management)

Infectious Diseases Society of America, http://www.idsociety.org/Content.aspx?id=9088 (for the most current infectious diseases practice guidelines prepared or endorsed by the Infectious Diseases Society of America)

National Commission on Correctional Health Care, *Standards for Health Services in Jails* (2014).

Exec. Order 13166.

ICE/ERO *Performance-based National Detention Standards 2011:*

- "1.2 Environmental Health and Safety," particularly in regard to storing, inventorying and handling needles and other sharp instruments; standard precautions to prevent contact with blood and other body fluids; sanitation and cleaning to prevent and control infectious diseases; and disposing of hazardous and infectious waste;
- "2.11 Sexual Abuse and Assault Prevention and Intervention";
- "4.2 Hunger Strikes";
- "4.6 Significant Self-harm and Suicide Prevention and Intervention"; and
- "4.7 Terminal Illness, Advance Directives and Death."

ICE Health Service Corps (IHSC) *Policies and Procedures Manual*.

The Joint Commission.

www.flu.gov

www.aids.gov

"*Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities*," 79 Fed. Reg. 13100 (Mar. 7, 2014).

# V. Expected Practices

## A. General

Every facility shall directly or contractually provide its detainee population with the following:

1. Initial medical, mental health and dental screening;
2. Medically necessary and appropriate medical, dental and mental health care and pharmaceutical services;
3. Comprehensive, routine and preventive health care, as medically indicated;
4. Emergency care;
5. Specialty health care;
6. Timely responses to medical complaints; and
7. Hospitalization as needed within the local community.
8. Staff or professional language services necessary for detainees with limited English proficiency (LEP) during any medical or mental health appointment, sick call, treatment, or consultation.

***Medical facilities within the detention facility shall achieve and maintain current accreditation with the National Commission on Correctional Health Care (NCCHC), and shall maintain compliance with those standards.*

## B. Designation of Authority

A designated health services administrator (HSA) or the equivalent in non-IHSC staffed detention facilities shall have overall responsibility for health care services pursuant to a written agreement, contract or job description. The HSA is a physician or health care professional and shall be identified to detainees.

The designated clinical medical authority (CMA) at the facility shall have overall responsibility for medical clinical care pursuant to a written agreement, contract or job description. The CMA shall be a medical doctor (MD) or doctor of osteopathy (DO). The CMA may designate a clinically trained professional to have medical decision making authority in the event that the CMA is unavailable.

When the HSA is other than a physician, final clinical judgment shall rest with the facility's designated CMA. In no event shall clinical decisions be made by non-clinicians.

The HSA shall be authorized and responsible for making decisions about the deployment of health resources and the day-to-day operations of the health services program. The CMA together with the HSA establishes the processes and procedures necessary to meet the medical standards outlined herein.

All facilities shall provide medical staff and sufficient support personnel to meet these standards. A staffing plan will be reviewed at least annually which identifies the positions needed to perform the required services.

Health care personnel perform duties within their scope of practice for which they are credentialed by training, licensure, certification, job descriptions, and/or written standing or direct orders by personnel authorized by law to give such orders.

The facility administrator, in collaboration with the CMA and HSA, negotiates and maintains arrangements with nearby medical facilities or health care providers to provide required health care not available within the facility, as well as identifying custodial officers to transport and remain with detainees for the duration of any off-site treatment or hospital admission.

## C. Communicable Disease and Infection Control

### 1. General

Each facility shall have written plans that address the management of infectious and communicable diseases, including screening, prevention, education, identification, monitoring and surveillance, immunization (when applicable), treatment, follow-up, isolation (when indicated) and reporting to local, state and federal agencies.

Plans shall include:

a. coordination with local public health authorities;

b. ongoing education for staff and detainees;

c. control, treatment and prevention strategies;

d. protection of detainee confidentiality;

e. media relations, in coordination with the local Public Affairs Officer (PAO);

f. procedures for the identification, surveillance, immunization, follow-up and isolation of patients;

g. hand hygiene

h. management of infectious diseases and reporting them to local and/or state health departments in accordance with established guidelines and applicable laws; and

i. management of bio-hazardous waste and decontamination of medical and dental equipment that complies with applicable laws and standard "1.2 Environmental Health and Safety."

Facilities shall comply with current and future plans implemented by federal, state or local authorities addressing specific public health issues including

communicable disease reporting requirements. Infectious and communicable disease control activities shall be reviewed and discussed in the quarterly administrative meetings as described in Section V.DD of this detention standard. Designated medical staff shall report to the IHSC Public Health, Safety, and Preparedness Unit all detainees diagnosed with a communicable disease of public health significance.

### 2. Tuberculosis (TB) Management

As indicated in this standard below in section "J. Medical and Mental Health Screening of New Arrivals," screening for TB is initiated at intake and in accordance with Center for Disease Control and Prevention (CDC) guidelines.

All new arrivals shall receive TB screening within 12 hours of intake and in accordance with CDC guidelines (www.cdc.gov/tb). For detainees that have been in continuous law enforcement custody, symptom screening plus documented TB screening within one year of arrival may be accepted for intake screening purposes.

Annual or periodic TB testing shall be implemented in accordance with CDC guidelines; annual TB screening method should be appropriately selected with consideration given to the initial screening method conducted or documented during intake.

Detainees with symptoms suggestive of TB, or with suspected or confirmed active TB disease based on clinical and/or laboratory findings, shall be placed in a functional airborne infection isolation room with negative pressure ventilation and be promptly evaluated for TB disease. Patients with suspected active TB shall remain in airborne infection isolation until determined by a qualified provider to be noncontagious in accordance with CDC guidelines.

For all patients with confirmed and suspected active tuberculosis, designated medical staff shall:

a. Report all cases to local and/or state health departments within one working day of meeting reporting criteria and in accordance with established guidelines and applicable laws, identified by the custodial agency and the detainee's identifying number of that agency (ICE detainees are reported as being in ICE custody and are identified by their alien numbers).

b. Report all detainees with suspected or confirmed TB to the ICE Health Service Corps (IHSC), Public Health, Safety, and Preparedness Unit within one working day of initial identification with suspected or confirmed TB disease.

   Reporting shall include names, aliases, date of birth, alien number, case status/classification, available diagnostic and lab results, treatment status (including drugs and dosages), treatment start date, a summary case report, and a point of contact and telephone number for follow-up.

c. Promptly report any movement of TB patients, including hospitalizations, facility transfers, releases, or removals/deportations to the local and/or state health department and the IHSC Public Health, Safety, and Preparedness Unit.

When treatment is indicated, multi-drug, anti-TB therapy shall be administered using directly observed therapy (DOT) in accordance with American Thoracic Society (ATS) and CDC guidelines. For patients with drug-resistant or multi-drug-resistant TB, the state or local health department shall be consulted to establish a customized treatment regimen and treatment plan. Patients receiving anti-TB therapy shall be provided with a 15 day supply of medications and appropriate education when transferred, released or deported, in an effort to prevent interruptions in treatment until care is continued in another location.

Treatment for latent TB infection (LTBI) shall not be initiated unless active TB disease is ruled out.

Designated medical staff shall coordinate with the IHSC Epidemiology Unit and the local and/or state health department to facilitate an international referral and continuity of therapy. Designated

medical staff shall collaborate with the local and/or state health department on tuberculosis and other communicable diseases of public health significance.

### 3. Significant Communicable Disease

Designated medical staff shall notify the IHSC Public Health, Safety, and Preparedness Unit of any ICE detainee with a significant communicable disease and of any contact or outbreak investigations involving ICE detainees exposed to a significant communicable disease without known immunity. Significant communicable diseases include, but are not limited to, varicella (chicken pox), measles, mumps, pertussis (whooping cough), and typhoid.

### 4. Bloodborne Pathogens

Infection control awareness shall be communicated on a regular basis to correctional and medical staff, as well as detainees. Detainees exposed to potentially infectious body fluids (e.g., through needle sticks or bites) shall be afforded immediate medical assistance, and the incident shall be reported as soon as possible to the clinical director or designee and documented in the medical file. All detainees shall be assumed to be infectious for bloodborne pathogens, and standard precautions are to be used at all times when caring for all detainees.

Each facility shall establish a written plan to address exposure to bloodborne pathogens; the management of hepatitis A, B, and C; and the management of HIV infection, including reporting.

a. Hepatitis

A detainee may request hepatitis testing at any time during detention

b. HIV

A detainee may request HIV testing at any time during detention. Persons who must feed, escort, directly supervise, interview or conduct routine office work with HIV patients are not considered at risk of infection. However, persons regularly exposed to blood are at risk. Facilities shall develop a written plan to ensure the highest degree of confidentiality regarding HIV status and medical condition. Staff training must emphasize the need for confidentiality, and procedures must be in place to limit access to health records to only authorized individuals and only when necessary.

The accurate diagnosis and medical management of HIV infection among detainees shall be promoted. An HIV diagnosis may be made only by a licensed health care provider, based on a medical history, current clinical evaluation of signs and symptoms and laboratory studies.

c. Clinical Evaluation and Management

Medical personnel shall provide all detainees diagnosed with HIV/AIDS medical care consistent with national recommendations and guidelines disseminated through the U.S. Department of Health and Human Services, the CDC, and the Infectious Diseases Society of America. Medical and pharmacy personnel shall ensure that all Food and Drug Administration (FDA) medications currently approved for the treatment of HIV/AIDS are accessible. Medical and pharmacy personnel shall develop and implement distribution procedures to ensure timely and confidential access to medications.

Many of these guidelines are available through the following links:
http://aidsinfo.nih.gov/Guidelines/default.aspx
http://www.cdc.gov/hiv/resources/guidelines/index.htm#treatment
http://www.idsociety.org/Content.aspx?id=9088

Medical and pharmacy personnel shall ensure the facility maintains access to adequate supplies of FDA-approved medications for the treatment of HIV/AIDS to ensure newly admitted detainees shall be able to continue with their treatments without interruption. Upon release, detainees currently receiving highly active antiretroviral therapy and other drugs shall receive up to a 30-

day supply of their medications as medically appropriate.

When current symptoms are suggestive of HIV infection, the following procedures shall be implemented.

1) Clinical evaluation shall determine the medical need for isolation.

   Detainees with HIV shall not be separated from the general population, either pending a test result or after a test report, unless clinical evaluation reveals a medical need for isolation. Segregation of HIV-positive detainees is not necessary for public health purposes.

2) Following a clinical evaluation, if a detainee manifests symptoms requiring treatment beyond the facility's capability, the provider shall recommend the detainee's transfer to a local hospital or other appropriate facility for further medical testing, final diagnosis and acute treatment as needed, consistent with local operating procedures.

3) Any detainee with active tuberculosis shall also be evaluated for possible HIV infection.

4) New HIV-positive diagnoses must be reported to government bodies according to state and local laws and requirements; the HSA is responsible for ensuring that all applicable state requirements are met.

   The "Standard Precautions" section of standard "1.2 Environmental Health and Safety" provides more detailed information.

## D. Notifying Detainees about Health Care Services

In accordance with standard "6.1 Detainee Handbook," the facility shall provide each detainee, upon admittance, a copy of the detainee handbook and local supplement, in which procedures for access to health care services are explained.

Health care practitioners should explain any rules about mandatory reporting and other limits to confidentiality in their interactions with detainees. Informed consent shall be obtained prior to providing treatment (absent medical emergencies). Consent forms and refusals shall be documented and placed in the detainee's medical file.

In accordance with the section on Orientation in standard "2.1 Admission and Release," access to health care services, the sick call and medical grievance processes shall be included in the orientation curriculum for newly admitted detainees.

## E. Translation and Language Access for Detainees with Limited English Proficiency

Facilities shall provide appropriate interpretation and language services for LEP detainees related to medical and mental health care. Where appropriate staff interpretation is not available, facilities will make use of professional interpretation services. Detainees shall not be used for interpretation services during any medical or mental health service. Interpretation and translation services by other detainees shall only be provided in an emergency medical situation.

Facilities shall post signs in medical intake areas in English, Spanish, and languages spoken by other significant segments of the facility's detainee population listing what language assistance is available during any medical or mental health treatment, diagnostic test, or evaluation.

## F. Facilities

### 1. Examination and Treatment Area

Adequate space and equipment shall be furnished in all facilities so that all detainees may be provided basic health examinations and treatment in private while ensuring safety.

A holding/waiting area shall be located in the medical facility under the direct supervision of custodial officers. A detainee toilet and drinking

fountain shall be accessible from the holding/waiting area.

### 2. Medical Records

Medical records shall be kept separate from detainee detention records and stored in a securely locked area within the medical unit.

### 3. Medical Housing

If there is a specific area, separate from other housing areas, where detainees are admitted for health observation and care under the supervision and direction of health care personnel, consideration shall be given to the detainee's age, gender, medical requirements and custody classification and the following minimum standards shall be met:

a. Care

1) Physician at the facility or on call 24 hours per day;

2) Qualified health care personnel on duty 24 hours per day when patients are present;

3) Staff members within sight or sound of all patients;

4) Maintenance of a separate medical housing record distinct from the complete medical record; and

5) Compliance with all established guidelines and applicable laws.

Detainees in medical housing shall have access to other services such as telephone, legal access and materials, consistent with their medical conditions.

Prior to placing a detainee with a mental illness in medical housing, a determination shall be made by a medical or mental health professional that placement in medical housing is medically necessary.

b. Wash Basins, Bathing Facilities and Toilets

1) Detainees shall have access to operable washbasins with hot and cold running water at a minimum ratio of 1 for every 12 detainees, unless state or local building codes specify a different ratio.

2) Sufficient bathing facilities shall be provided to allow detainees to bathe daily, and sufficient bathing facilities shall be physically accessible for detainees with disabilities, as required by the applicable accessibility standard. Water shall be thermostatically controlled to temperatures ranging from 100 F to 120 F degrees.

3) Detainees shall have access to operable toilets and hand-washing facilities 24 hours per day and shall be permitted to use toilet facilities without staff assistance. Unless state or local building or health codes specify otherwise:

a) toilets shall be provided at a minimum ratio of 1 to every 12 detainees in male facilities and 1 for every 8 in female facilities, and

b) all housing units with three or more detainees shall have a minimum of two toilets.

## G. Pharmaceutical Management

Each detention facility shall have and comply with written policy and procedures for the management of pharmaceuticals, to include:

1. a formulary of all prescription and nonprescription medicines stocked or routinely procured from outside sources;
2. identification of a method for promptly approving and obtaining medicines not on the formulary;
3. prescription practices, including requirements that medications are prescribed only when clinically indicated, and that prescriptions are reviewed before being renewed;
4. procurement, receipt, distribution, storage, dispensing, administration and disposal of

medications;

5. secure storage and disposal and perpetual inventory of all controlled substances (DEA Schedule II-V), syringes, and needles;
6. medicine administration error reports to be kept for all administration errors;
7. all staff responsible for administering or having access to pharmaceuticals to be trained on medication management before beginning duty;
8. all pharmaceuticals to be stored in a secure area with the following features:
   a. a secure perimeter;
   b. access limited to authorized medical staff (never detainees);
   c. solid walls from floor to ceiling and a solid ceiling;
   d. a solid core entrance door with a high security lock (with no other access); and
   e. a secure medication storage area;
9. administration and management in accordance with state and federal law;
10. supervision by properly licensed personnel;
11. administration of medications by properly licensed, credentialed, trained personnel under the supervision of the health services administrator (HSA), clinical medical authority (CMA), both; and
12. documentation of accountability for administering or distributing medications in a timely manner, and according to licensed provider orders.

## H. Nonprescription Medications

The facility administrator and HSA shall jointly approve any nonprescription medications that are available to detainees outside of health services (e.g., sold in commissary, distributed by housing officers, etc.), and shall jointly review the list, on an annual basis at a minimum.

## I. Medical Personnel

All health care staff must be verifiably licensed, certified, credentialed, and/or registered in compliance with applicable state and federal requirements. Copies of the documents must be maintained on site and readily available for review. A restricted license does not meet this requirement.

## J. Medical and Mental Health Screening of New Arrivals

As soon as possible, but no later than 12 hours after arrival, all detainees shall receive, by a health care provider or a specially trained detention officer, an initial medical, dental and mental health screening and be asked for information regarding any known acute or emergent medical conditions. Any detainee responding in the affirmative shall be sent for evaluation to a qualified, licensed health care provider as quickly as possible, but in no later than two working days. Detainees who appear upon arrival to raise urgent medical or mental health concerns shall receive priority in the intake screening process. For intrasystem transfers, a qualified health care professional will review each incoming detainee's health record or health summary within 12 hours of arrival, to ensure continuity of care.

For LEP individuals, interpretation for the screening will be conducted by facility staff with appropriate language capabilities or through professional interpretation services, as described in Section E of this standard ("Translation and Language Access for Detainees with Limited English Proficiency").

If screening is performed by a detention officer, the facility shall maintain documentation of the officer's special training, and the officer shall have available for reference the training syllabus, to include education on patient confidentiality of disclosed information.

The screening shall inquire into the following:

1. any past history of serious infectious or communicable illness, and any treatment or symptoms;
2. history of physical and mental illness;
3. pain assessment;
4. current and past medication;
5. allergies;
6. past surgical procedures;
7. symptoms of active TB or previous TB treatment;
8. dental care history;
9. use of alcohol, tobacco and other drugs, including an assessment for risk of potential withdrawal;
10. possibility of pregnancy;
11. other relevant health problems identified by the CMA responsible for screening inquiry;
12. observation of behavior, including state of consciousness, mental status, appearance, conduct, tremor, sweating;
13. history of suicide attempts or current suicidal/homicidal ideation or intent;
14. observation of body deformities and other physical abnormalities;
15. inquire into a transgender detainee's gender self-identification and history of transition-related care, when a detainee self-identifies as transgender;
16. past hospitalizations;
17. chronic illness (including, but not limited to, hypertension and diabetes);
18. dietary needs; and
19. any history of physical or sexual victimization or perpetrated sexual abuse, and when the incident occurred.

Where there is a clinically significant finding as a result of the initial screening, an immediate referral shall be initiated and the detainee shall receive a health assessment no later than two working days from the initial screening.

For further information and guidance, see standard "2.1 Admission and Release."

Initial screenings shall be conducted in settings that respect detainees' privacy and include observation and interview questions related to the detainee's potential suicide risk and mental health. For further information, see standard "4.6 Significant Self-harm and Suicide Prevention and Intervention."

If, at any time during the screening process, there is an indication of need of, or a request for, mental health services, the HSA must be notified within 24 hours. The CMA, HSA or other qualified licensed health care provider shall ensure a full mental health evaluation, if indicated. Mental health evaluations must be conducted within the timeframes prescribed in "O. Mental Health Program" of this standard.

All facilities shall have policies and procedures in place to ensure documentation of the initial health screening and assessment.

The health intake screening shall be conducted using the IHSC Intake Screening Form (IHSC 795A) or equivalent and shall be completed prior to the detainee's placement in a housing unit. The Intake Screening Form attached as Appendix 4.3.A mirrors form IHSC 795A and may be used by facilities to ensure compliance with screening requirements in these standards.

Upon completion of the In-Processing Health Screening form, the detention officer shall immediately notify medical staff when one or more positive responses are documented. Medical staff will then assess priority for treatment (e.g. urgent, today or routine).

Limited-English proficient detainees and detainees who are hearing impaired shall be provided

interpretation or translation services or other assistance as needed for medical care activities.

Language assistance may be provided by another medical staff member competent in the language or by a professional service, such as a telephone interpretation service.

## K. Substance Dependence and Detoxification

All detainees shall be evaluated through an initial screening for use of and/or dependence on mood- and mind-altering substances, alcohol, opiates, hypnotics, sedatives, etc. Detainees who report the use of such substances shall be evaluated for their degree of reliance on and potential for withdrawal from the substance.

The CMA shall establish guidelines for evaluation and treatment of new arrivals who require detoxification.

Detainees experiencing severe or life-threatening intoxication or withdrawal shall be transferred immediately to an emergency department for evaluation.

Once evaluated, the detainee will be referred to an appropriate facility qualified to provide treatment and monitoring for withdrawal, or treated on-site if the facility is staffed with qualified personnel and equipment to provide appropriate care.

## L. Privacy and Chaperones

1. Medical Privacy

Medical and mental health interviews, screenings, appraisals, examinations, procedures, and administration of medication shall be conducted in settings that respect detainees' privacy.

2. Same-Gender Providers and Chaperones

A detainee's request to see a health care provider of the same gender should be considered; when not feasible, a same-gender chaperone shall be provided. When care is provided by a health care provider of the opposite gender, a detainee shall be provided a same-gender chaperone upon the detainee's request.

A same-gender chaperone shall be provided, even in the absence of a request by the detainee, when a medical encounter involves a physical examination of sensitive body parts, to include breast, genital, or rectal examinations, by a provider of the opposite gender.

Only medical personnel may serve as chaperones during medical encounters and examinations.

## M. Comprehensive Health Assessment

Each facility's health care provider shall conduct a comprehensive health assessment, including a physical examination and mental health screening, on each detainee within 14 days of the detainee's arrival unless more immediate attention is required due to an acute or identifiable chronic condition. Physical examinations shall be performed by a physician, physician assistant, nurse practitioner, RN (with documented training provided by a physician) or other health care practitioner as permitted by law.

Facility medical personnel are encouraged to use the form "Physical Examination/Health Appraisal" attached as Appendix 4.3.B when conducting the comprehensive health assessment.

If documentation exists of such a health assessment within the previous 90 days, the facility health care provider upon review may determine that a new appraisal is not required.

The CMA shall be responsible for review of all comprehensive health assessments to assess the priority for treatment.

Detainees diagnosed with a communicable disease shall be isolated according to national standards of medical practice and procedures.

## N. Medical/Psychiatric Alerts and Holds

Where a detainee has a serious medical or mental

health condition or otherwise requires special or close medical care, medical staff shall complete a Medical/Psychiatric Alert form (IHSC-834) or equivalent, and file the form in the detainee's medical record. Where medical staff furthermore determine the condition to be serious enough to require medical clearance of the detainee prior to transfer or removal, medical staff shall also place a medical hold on the detainee using the Medical/Psychiatric Alert form (IHSC-834) or equivalent, which serves to prevent ICE from transferring or removing the detainee without the prior clearance of medical staff at the facility. The facility administrator shall receive notice of all medical/psychiatric alerts or holds, and shall be responsible for notifying ICE/ERO of any medical alerts or holds placed on a detainee that is to be transferred.

Potential health conditions meriting the completion of a Medical/Psychiatric Alert form may include, but are not limited to:

1. medical conditions requiring ongoing therapy, such as:
   a. active TB
   b. infectious diseases
   c. chronic conditions
2. mental health conditions requiring ongoing therapy, such as:
   a. suicidal behavior or tendencies
3. ongoing physical therapy
4. pregnancy

## O. Mental Health Program

### 1. Mental Health Services Required

Each facility shall have an in-house or contractual mental health program, approved by the appropriate medical authority that provides:

a. intake screening Form IHSC 795A (or equivalent) for mental health concerns;

b. referral as needed for evaluation, diagnosis, treatment and monitoring of mental illness by a competent mental health professional.

c. crisis intervention and management of acute mental health episodes;

d. transfer to licensed mental health facilities of detainees whose mental health needs exceed the capabilities of the facility; and

e. a suicide prevention program.

### 2. Mental Health Provider

The term "mental health provider" includes psychiatrists, physicians, psychologists, clinical social workers and other appropriately licensed independent mental health practitioners

### 3. Mental Health Evaluation

Based on intake screening, the comprehensive health assessment, medical documentation, or subsequent observations by detention staff or medical personnel, any detainee referred for mental health treatment shall receive an evaluation by a qualified health care provider no later than 72 hours after the referral, or sooner if necessary. If the practitioner is not a mental health provider and further referral is necessary, the detainee will be evaluated by a mental health provider within the next business day.

Such evaluation and screenings shall include:

a. reason for referral;

b. history of any mental health treatment or evaluation;

c. history of illicit drug/alcohol use or abuse or treatment for such;

d. history of suicide attempts;

e. current suicidal/homicidal ideation or intent;

f. current use of any medication;

g. estimate of current intellectual function;

h. mental health screening, to include prior history physical, sexual or emotional abuse;
i. impact of any pertinent physical condition, such as head trauma;
j. recommend actions for any appropriate treatment, including but not limited to the following:
    1) remain in general population with psychotropic medication and counseling,
    2) "short-stay" unit or infirmary,
    3) Special Management Unit, or
    4) community hospitalization; and
k. recommending and/or implementing a treatment plan, including recommendations concerning transfer, housing, voluntary work and other program participation.

### 4. Referrals and Treatment

Any detainee referred for mental health treatment shall receive an evaluation by a qualified health care provider no later than 72 hours after the referral, or sooner if necessary. If the practitioner is not a mental health provider and further referral is necessary, the detainee will be evaluated by a mental health provider within the next business day.

The provider shall develop an overall treatment/management plan.

If the detainee's mental illness or developmental or intellectual disability needs exceed the treatment capability of the facility, a referral for an outside mental health facility may be initiated.

Any detainee prescribed psychiatric medications must be regularly evaluated by a duly-licensed and appropriate medical professional, at least once a month, to ensure proper treatment and dosage;

### 5. Medical Isolation

The CMA may authorize medical isolation for a detainee who is at high risk for violent behavior because of a mental health condition. The CMA shall be responsible for the daily reassessment of the need for continued medical isolation to ensure the health and safety of the detainee.

Medical isolation shall not be used as a punitive measure.

### 6. Involuntary Administration of Psychotropic Medication

Involuntary administration of psychotropic medication to detainees shall comply with established guidelines and applicable laws, and shall be performed only pursuant to the specific, written and detailed authorization of a physician. Absent declared medical emergency, before psychotropic medication is involuntarily administered, it is required that the HSA contact ERO management, who shall then contact respective ICE Office of Chief Counsel to facilitate a request for a court order to involuntarily medicate the detainee.

Prior to involuntarily administering psychotropic medication, absent a declared medical emergency, the authorizing physician shall:

a. review the medical record of the detainee and conduct a medical examination;
b. specify the reasons for and duration of therapy, and whether the detainee has been asked if he/she would consent to such medication;
c. specify the medication to be administered, the dosage and the possible side effects of the medication;
d. document that less restrictive intervention options have been exercised without success;
e. detail how medication is to be administered;
f. monitor the detainee for adverse reactions and side effects; and
g. prepare treatment plans for less restrictive alternatives as soon as possible.

Also see section "Z: Informed Consent and

Involuntary Treatment" later in this detention standard.

## P. Referrals for Sexual Abuse Victims or Abusers

If any security or medical intake screening or classification assessment indicates that a detainee has experienced prior sexual victimization or perpetrated sexual abuse, staff shall, as appropriate, ensure that the detainee is immediately referred to a qualified medical or mental health practitioner for medical and/or mental health follow-up as appropriate.

When a referral for medical follow-up is initiated, the detainee shall receive a health evaluation no later than two working days from the date of assessment. When a referral for mental health follow-up is initiated, the detainee shall receive a mental health evaluation no later than 72 hours after the referral.

For the purposes of this section, a "qualified medical practitioner" or "qualified mental health practitioner" means a health or mental health professional, respectively, who in addition to being qualified to evaluate and care for patients within the scope of his/her professional practice, has successfully completed specialized training for treating sexual abuse victims.

## Q. Annual Health Examinations

Any detainee in ICE custody for more than one year continuously shall receive health examinations on an annual basis. Such examinations may occur more frequently for certain individuals, depending on their medical history and/or health conditions. Detainees shall have access to age- and gender-appropriate exams annually, including re-screening for TB.

## R. Dental Treatment

An initial dental screening shall be performed within 14 days of the detainee's arrival. The initial dental screening may be performed by a dentist or a properly trained qualified health provider.

1. Emergency dental treatment shall be provided for immediate relief of pain, trauma and acute oral infection.
2. Routine dental treatment may be provided to detainees in ICE custody for whom dental treatment is inaccessible for prolonged periods because of detention for over six months, including amalgam and composite restorations, prophylaxis, root canals, extractions, x-rays, the repair and adjustment of prosthetic appliances and other procedures required to maintain the detainee's health. Dental exams and treatment shall be performed only by licensed dental personnel.

## S. Sick Call

Each facility shall have a sick call procedure that allows detainees the unrestricted opportunity to freely request health care services (including mental health and dental services) provided by a physician or other qualified medical staff in a clinical setting. This procedure shall include:

1. clearly written policies and procedures;
2. sick call process shall be communicated in writing and verbally to detainees during their orientation;
3. regularly scheduled "sick call" times shall be established and communicated to detainees;
4. an established procedure shall be in place at all facilities to ensure that all sick call requests are received and triaged by appropriate medical personnel within 24 hours after a detainee submits the request. All written sick call requests shall be date and time stamped and filed in the detainee's medical record. Medical personnel shall review the request slips and determine when the detainee shall be seen based on acuity of the problem. In an urgent situation, the housing unit officer shall notify medical personnel immediately.

If the procedure requires a written request slip, such

slips shall be provided in English and the most common languages spoken by the detainee population of that facility. Limited-English proficient detainees and detainees who are hearing impaired shall be provided interpretation/translation services or other assistance as needed to complete a request slip.

All detainees, including those in SMUs, regardless of classification, shall have access to sick call. See standard "2.12 Special Management Units" for details.

All facilities shall maintain a permanent record of all sick call requests.

## T. Emergency Medical Services and First Aid

1. Each facility shall have a written emergency services plan for delivery of 24-hour emergency health care. This plan shall be prepared in consultation with the facility's CMA or the HSA, and must include the following:
   a. an on-call physician, dentist and mental health professional, or designee, that are available 24 hours per day;
   b. a list of telephone numbers for local ambulances and hospital services available to all staff;
   c. an automatic external defibrillator (AED) shall be maintained for use at each facility and accessible to staff;
   d. all detention and medical staff shall receive cardio pulmonary resuscitation (CPR, AED), and emergency first aid training annually;
   e. detention and health care personnel shall be trained annually to respond to health-related situations within four minutes; and
   f. security procedures that ensure the immediate transfer of detainees for emergency medical care.
2. The health services administrator ensures that medical staff have training and competency in implementing the facility's emergency health care plan appropriate for each staff's scope of practice or position. The facility administrator ensures that non-medical staff have appropriate training and competency in implementing the facility's emergency plan appropriate for each staff's position. Training and competency assessment shall include the following areas::
   a. recognizing of signs of potential health emergencies and the required responses;
   b. administering first aid, AED and cardiopulmonary resuscitation (CPR);
   c. obtaining emergency medical assistance through the facility plan and its required procedures;
   d. recognizing signs and symptoms of mental illness and suicide risk; and
   e. the facility's established plan and procedures for providing emergency medical care including, when required, the safe and secure transfer of detainees for appropriate hospital or other medical services, including by ambulance when indicated. The plan must provide for expedited entrance to and exit from the facility.
3. When a non-medical employee is unsure whether emergency care is required, he/she shall immediately notify medical personnel to make the determination.
4. Medical and safety equipment shall be available and maintained, and staff shall be trained in proper use of the equipment.
5. The facility administrator, in consultation with the designee for environmental health and safety, determines the number, contents, and placement of first aid kits, and establishes protocols for monthly inspections of first aid kits.

6. Victims of sexual abuse shall have timely access to emergency medical treatment and crisis intervention services in accordance with standard "2.11 Sexual Abuse and Assault, Prevention and Intervention."

## U. Delivery of Medication

Distribution of medication (including over the counter) shall be performed in accordance with specific instructions and procedures established by the HSA in consultation with the CMA. Written records of all prescribed medication given to or refused by detainees shall be maintained.

1. If prescribed medication must be delivered at a time when medical staff is not on duty, the medication may be distributed by detention officers, where it is permitted by state law to do so, who have received proper training by the HSA or designee.
2. The facility shall maintain documentation of the training given any officer required to distribute medication, and the officer shall have available for reference the training syllabus or other guide or protocol provided by the health authority.
3. Detainees may not deliver or administer medications to other detainees.
4. All prescribed medications and medically necessary treatments shall be provided to detainees on schedule and without interruption, absent exigent circumstances.
5. Detainees who arrive at a detention facility with prescribed medications or who report being on such medications, shall be evaluated by a qualified health care professional as soon as possible, but not later than 24 hours after arrival, and provisions shall be made to secure medically necessary medications.
6. Detainees shall not be charged for any medical services to include pharmaceuticals dispensed by medical personnel

## V. Health Education and Wellness Information

Qualified health care personnel shall provide detainees health education and wellness information on topics including, but not limited to, the following:

1. dangers of self-medication;
2. personal and hand hygiene and dental care;
3. prevention of communicable diseases;
4. smoking cessation;
5. self-care for chronic conditions; and
6. benefits of physical fitness.

## W. Special Needs and Close Medical Supervision

Consistent with Standard 4.8 "Disability Identification, Assessment, and Accommodation" and the IHSC Detainee Covered Services Package, detainees will be provided medical prosthetic devices or other impairment aids, such as eyeglasses, hearing aids, or wheelchairs.

When a detainee requires close medical supervision, including chronic and convalescent care, a written treatment plan, including access to health care and other care and supervision personnel, shall be developed and approved by the appropriate qualified licensed health care provider, in consultation with the patient, with periodic review. Likewise, staff responsible for such matters as housing and program assignments and disciplinary measures shall consult with the responsible qualified licensed health care provider or health services administrator.

Exercise areas shall be available to meet exercise and physical therapy requirements of individual detainee treatment plans.

Transgender detainees who were already receiving hormone therapy when taken into ICE custody shall have continued access. All transgender detainees shall

have access to mental health care, and other transgender-related health care and medication based on medical need. Treatment shall follow accepted guidelines regarding medically necessary transition-related care.

For special needs related to female detainees, see standard "4.4 Medical Care (Women).

## X. Notifications of Detainees with Serious Illnesses and Other Specified Conditions

The facility administrator and clinical medical authority shall ensure that the Field Office Director is notified as soon as practicable of any detainee housed at the facility who is determined to have a serious physical or mental illness or to be pregnant, or have medical complications related to advanced age, but no later than 72 hours after such determination. The written notification shall become part of the detainee's health record file.

### 1. Serious Physical Illness

For purposes of this subsection only, the following non-exhaustive categories of medical conditions may be considered to constitute serious physical illness –

- any terminal illness;
- active cancer, including but not limited to aliens undergoing chemotherapy;
- Acquired Immuno- Deficiency Syndrome (AIDS) or diagnosed HIV-positive conditions requiring medication;
- multi-drug-resistant (MDR) or extensively drug-resistant (XDR) tuberculosis disease;
- any condition that requires dialysis;
- any condition that requires tube-feedings, mechanical ventilation, an implanted cardiac device, or an oxygen tank;
- any chronic deteriorating condition requiring multiple medications, to include progressive immune-suppressive conditions;
- any active condition that has caused repeated loss of consciousness;
- any condition that requires an imminent medical procedure or other medical intervention to prevent deterioration;
- any condition or infirmity that requires continuous or near-continuous medical care, such as those who are bedbound or incapable of caring for themselves; or any ongoing or recurrent conditions that have required a recent or prolonged hospitalization, typically for greater than 14 days, or a recent and prolonged stay in the medical clinic of a detention or correctional facility, typically for greater than 30 days;
- conditions requiring frequent care that is beyond the medical capabilities of detention facilities where the alien may be housed;
- any condition that would preclude the alien from being housed, typically for greater than 30 days, in a non-restrictive setting (such as a general population housing unit, as opposed to a special management unit or a medical clinic); or
- any other physical illness determined to be serious by facility medical personnel or by IHSC.

### 2. Serious Mental Illness

For the purposes of this section, the following non-exhaustive categories of conditions should be considered to constitute a serious mental illness:

(a) conditions that a qualified medical provider has determined to meet the criteria for a "serious mental disorder or condition" pursuant to applicable ICE policies, including:

- a mental disorder that is causing serious limitations in communication, memory, or general mental and/or intellectual functioning (e.g. communicating, conducting activities of daily life, social skills); or a severe medical condition(s) (e.g. traumatic brain injury or dementia) that is significantly impairing mental function; or
- one or more of the following active psychiatric symptoms and/or behavior: severe disorganization, active hallucinations or delusions, mania, catatonia, severe depressive symptoms, suicidal ideation and/or behavior, marked anxiety of impulsivity.

- significant symptoms of one of the following:
  - Psychosis or Psychotic Disorder;
  - Bipolar Disorder;
  - Schizophrenia or Schizoaffective Disorder;
  - Major Depressive Disorder with Psychotic Features;
  - Dementia and/or a Neurocognitive Disorder; or
  - Intellectual Development Disorder (moderate, severe, or profound).

b) any ongoing or recurrent conditions that have required a recent or prolonged hospitalization, typically for greater than 14 days, or a recent and prolonged stay in the medical clinic of a detention or correctional facility, typically for greater than 30 days;

c) any condition that would preclude the alien from being housed, typically for greater than 30 days, in a non-restrictive setting (such as a general population housing unit, as opposed to a special management unit or a medical clinic);

d) any other mental illness determined to be serious by IHSC.

### 3. Pregnancy

The notification requirement in this section applies to all women who have been medically certified as pregnant, regardless of the stage of the pregnancy.

## Y. Restraints

Restraints for medical or mental health purposes may be authorized only by the facility's CMA or designee, after determining that less restrictive measures are not appropriate. In the absence of the CMA, qualified medical personnel may apply restraints upon declaring a medical emergency. Within one-hour of initiation of emergency restraints or seclusion, qualified medical staff shall notify and obtain an order from the CMA or designee.

a. The facility shall have written procedures that specify:

   1) the conditions under which restraints may be applied;
   2) the types of restraints to be used;
   3) the proper use, application and medical monitoring of restraints;
   4) requirements for documentation, including efforts to use less restrictive alternatives; and
   5) after-incident review.

The use of restraints requires documented approval and guidance from the CMA. Record-keeping and reporting requirements regarding the medical approval to use restraints shall be consistent with other provisions within these standards, including documentation in the detainee's A-file, detention

and medical file.

## Z. Continuity of Care

The facility HSA must ensure that a plan is developed that provides for continuity of medical care in the event of a change in detention placement or status.

The detainee's medical needs shall be taken into account prior to any transfer of the detainee to another facility. Alternatives to transfer shall be considered, taking into account the disruption that a transfer will cause to a detainee receiving medical care. Upon transfer to another facility, the medical provider shall prepare and provide a Medical Transfer Summary as required by "C. Responsibilities of the Health Care Provider at the Sending Facility," found in Standard 7.4 "Detainee Transfers." In addition, the medical provider shall ensure that at least 7 day (or, in the case of TB medications, 15 day and in the case of HIV/AIDS medications, 30 day) supply of medication shall accompany the detainee as ordered by the prescribing authority.

Upon removal or release from ICE custody, the detainee shall receive up to a 30 day supply of medication as ordered by the prescribing authority and a detailed medical care summary as described in "BB. Medical Records" of this standard. If a detainee is on prescribed narcotics, the clinical health authority shall make a determination regarding continuation, based on assessment of the detainee. The HSA must ensure that a continuity of treatment care plan is developed and a written copy provided to the detainee prior to removal.

## AA. Informed Consent and Involuntary Treatment

Involuntary treatment is a decision made only by medical staff under strict legal restrictions. When a detainee refuses medical treatment, and the licensed healthcare provider determines that a medical emergency exists, the physician may authorize involuntary medical treatment. Prior to any contemplated action involving non-emergent involuntary medical treatment, respective ICE Office of Chief Counsel shall be consulted.

1. Upon admission at the facility, documented informed consent shall be obtained for the provision of health care services.
2. All examinations, treatments, and procedures are governed by informed consent practices applicable in the jurisdiction.
3. A separate documented informed consent is required for invasive procedures, including surgeries, invasive diagnostic tests, and dental extractions.
4. Prior to the administration of psychotropic medications, a separate documented informed consent, that includes a description of the medication's side effects, shall be obtained.
5. If a consent form is not available in a language the detainee understands, professional interpretation services will be provided as described in Section E ("Translation and Language Access for Detainees with Limited English Proficiency") and documented on the form.
6. If a detainee refuses treatment and the CMA or designee determines that treatment is necessary, ICE/ERO shall be consulted in determining whether involuntary treatment shall be pursued.
7. If the detainee refuses to consent to treatment, medical staff shall make reasonable efforts to explain to the detainee the necessity for and propriety of the recommended treatment.
8. Medical staff shall ensure that the detainee's questions regarding the treatment are answered by appropriate medical personnel.
9. Medical staff shall explain the medical risks if treatment is declined and shall document their treatment efforts and refusal of treatment in the detainee's medical record. Detainees will be asked to sign a translated form that indicates that they have refused treatment.

10. The clinical medical authority and facility administrator shall look into refusals of treatment to ensure that such refusals are not the result of miscommunication or misunderstanding.
11. Facilities should make efforts to involve trusted individuals such as clergy or family members should a detainee refuse treatment.
12. A detainee who refuses examination or treatment may be segregated from the general population when such segregation is determined medically necessary by the CMA. Segregation shall only be for medical reasons that are documented in the medical record, and may not be used for punitive purposes. Such segregation shall only occur after a determination by a component mental health professional has taken place that shows the segregation shall not adversely affect the detainee's mental health.
13. In the event of a hunger strike, see standard "4.2 Hunger Strikes."

Standard "4.7 Terminal Illness, Advance Directives and Death" provides details regarding living wills and advance directives, organ donations and do not resuscitate (DNR) orders.

## BB. Medical Records

### 1. Health Record File

The HSA shall maintain a complete health record on each detainee that is:

a. Organized uniformly in accordance with appropriate accrediting body standards;

b. Available to all practitioners and used by them for health care documentation; and

c. Properly maintained and safeguarded in a securely locked area within the medical unit.

### 2. Confidentiality and Release of Medical Records

All medical providers, as well as detention officers and staff shall protect the privacy of detainees' medical information in accordance with established guidelines and applicable laws. These protections apply, not only to records maintained on paper, but also to electronic records where they are used. Staff training must emphasize the need for confidentiality and procedures must be in place to limit access to health records to only authorized individuals and only when necessary.

Information about a detainee's health status and a detainee's health record is confidential, and the active medical record shall be maintained separately from other detention records and be accessible in accordance with applicable laws and regulations.

The HSA shall provide the facility administrator and designated staff information that is necessary as follows:

a. to preserve the health and safety of the detainee, other detainees, staff or any other person;

b. for administrative and detention decisions such as housing, voluntary work assignments, security and transport; or

c. for management purposes such as audits and inspections.

When information is covered by the Privacy Act, specific legal restrictions govern the release of medical information or records.

Detainees who indicate they wish to obtain copies of their medical records shall be provided with the appropriate request form. ICE/ERO, or the facility administrator, shall provide limited-English proficient detainees and detainees who are hearing impaired with interpretation or translation services or other assistance as needed to make the written request, and shall assist in transmitting the request to the facility HSA.

Upon his/her request, while in detention, a detainee or his/her designated representative shall receive information from their medical records. Copies of health records shall be released by the HSA directly to a detainee or their designee, at no cost to the detainee, within a reasonable timeframe after receipt

by the HSA of a written authorization from the detainee.

A written request may serve as authorization for the release of health information, as long as it includes the following information, and meets any other requirements of the HSA:

a. address of the facility to release the information;
b. name of the individual or institution to receive the information;
c. detainee's full name, A-number (or other facility identification number), date of birth and nationality;
d. specific information to be released with inclusive dates of treatment; and
e. detainee's signature and date.

Following the release of health information, the written authorization shall be retained in the health record.

Detainees are to be informed that if they are released or removed from custody prior to laboratory results being evaluated, the results shall be made available by contacting the detention facility and providing a release of information consent.

### 3. Inactive Health Record Files

Inactive health record files shall be retained as permanent records in compliance with locally established procedures and the legal requirements of the jurisdiction.

### 4. Transfer and Release of Detainees

ICE/ERO and the HSA shall be notified when detainees are to be transferred or released. Detainees shall be transferred, released or removed, with proper medication to ensure continuity of care throughout the transfer and subsequent intake process, release or removal (see "W. Continuity of Care," above). Those detainees who are currently placed in a medical hold status must be evaluated and cleared by a licensed independent practitioner (LIP) prior to transfer or removal. In addition, the CMA or designee must inform the facility administrator in writing if the detainee's medical or psychiatric condition requires a medical escort during removal or transfer.

a. Notification of Medical/Psychiatric Alerts or Holds
   Upon receiving notification that a detainee is to be transferred, appropriate medical staff at the sending facility shall notify the facility administrator of any medical/psychiatric alerts or holds that have been assigned to the detainee, as reflected in the detainee's medical records. The facility administrator shall be responsible for providing notice to ICE/ERO of any medical alerts or holds placed on a detainee that is to be transferred.

b. Notification of Transfers, Releases and Removals
   The HSA shall be given advance notice by ICE/ERO prior to the release, transfer or removal of a detainee, so that medical staff may determine and provide for any medical needs associated with the transfer, release or removal.

c. Transfer of Medical Information

   1) When a detainee is transferred to another detention facility, the sending facility shall ensure that a Medical Transfer Summary accompanies the detainee, as required in "C. Responsibilities of the Health Care Provider at the Sending Facility" found in Standard 7.4 "Detainee Transfers.". Upon request of the receiving facility, the sending facility shall transmit a copy of the full medical record within 5 business days, and sooner than that if determined by the receiving facility to be a medically urgent matter.

   2) Upon removal or release from ICE custody, the detainee shall be provided medication, referrals to community-based providers as medically appropriate, and a detailed medical care summary. This summary should include

instructions that the detainee can understand and health history that would be meaningful to future medical providers. The summary shall include, at a minimum, the following items:

a) patient identification;

b) tuberculosis (TB) screening results (including results date) and current TB status if TB disease is suspected or confirmed;

c) current mental, dental, and physical health status, including all significant health issues, and highlighting any potential unstable issues or conditions which require urgent follow-up;

d) current medications, with instructions for dose, frequency, etc., with specific instructions for medications that must be administered en route;

e) any past hospitalizations or major surgical procedures;

f) recent test results, as appropriate;

g) known allergies;

h) any pending medical or mental health evaluations, tests, procedures, or treatments for a serious medical condition scheduled for the detainee at the sending facility. In the case of patients with communicable disease and/or other serious medical needs, detainees being released from ICE custody are given a list of community resources, at a minimum;

i) copies of any relevant documents as appropriate;

j) printed instructions on how to obtain the complete medical record; and

k) the name and contact information of the transferring medical official.

The IHSC Form 849 or equivalent, or the Medical Transfer Summary attached as Appendix 4.3.C, which mirrors IHSC Form 849, may be used by facilities to ensure compliance with these standards.

## CC. Terminal Illness or Death of a Detainee

Procedures to be followed in the event of a detainee's terminal illness or death are in standard "4.7 Terminal Illness, Advance Directives and Death." The standard also addresses detainee organ donations.

## DD. Medical Experimentation

Detainees shall not participate in medical, pharmaceutical or cosmetic research while under the care of ICE.

This stipulation does not preclude the use of approved clinical trials that may be warranted for a specific inmate's diagnosis or treatment when recommended and approved by the clinical medical director. Such measures require documented informed consent.

## EE. Administration of the Medical Department

### 1. Quarterly Administrative Meetings

The HSA shall convene a meeting quarterly at minimum, and include other facility and medical staff as appropriate. The meeting agenda shall include, at minimum, the following:

a. an account of the effectiveness of the facility's health care program;

b. discussions of health environment factors that may need improvement;

c. review and discussion of communicable disease and infectious control activities;

d. changes effected since the previous meetings; and

e. recommended corrective actions, as necessary.

Minutes of each meeting shall be recorded and kept on file.

### 2. Health Care Internal Review and Quality Assurance

The HSA shall implement a system of internal review and quality assurance. The system shall include:

a. participation in a multidisciplinary quality improvement committee;

b. collection, trending and analysis of data along with planning, interventions and reassessments;

c. evaluation of defined data;

d. analysis of the need for ongoing education and training;

e. on-site monitoring of health service outcomes on a regular basis through the following measures:

    1) chart reviews by the responsible physician or his/her designee, including investigation of complaints and quality of health records;

    2) review of practices for prescribing and administering medication;

    3) systematic investigation of complaints and grievances;

    4) monitoring of corrective action plans;

    5) reviewing all deaths, suicide attempts and illness outbreaks;

    6) developing and implementing corrective-action plans to address and resolve identified problems and concerns;

    7) reevaluating problems or concerns, to determine whether the corrective measures have achieved and sustained the desired results;

    8) incorporating findings of internal review activities into the organization's educational and training activities;

    9) maintaining appropriate records of internal review activities; and

    10) ensuring records of internal review activities comply with legal requirements on confidentiality of records.

### 3. Peer Review

The HSA shall implement an intra-organizational, external peer review program for all independently licensed medical professionals. Reviews shall be conducted at least annually.

## FF. Examinations by Independent Medical Service Providers and Experts

On occasion, medical and/or mental health examinations by a practitioner or expert not associated with ICE or the facility may provide a detainee with information useful in administrative proceedings.

If a detainee seeks an independent medical or mental health examination, the detainee or his/her legal representative shall submit to the Field Office Director a written request that details the reasons for such an examination. Ordinarily, the Field Office Director shall approve the request for independent examination, as long as such examination shall not present an unreasonable security risk. Requests for independent examinations shall be responded to as quickly as practicable. If a request is denied, the Field Office Director shall advise the requester in writing of the rationale.

Neither ICE/ERO nor the facility shall assume any costs of the examination, which will be at the detainee's expense. The facility shall provide a location for the examination but no medical equipment or supplies and the examination must be arranged and conducted in a manner consistent with maintaining the security and good order of the facility.

## GG. Tele-Health Systems

***The facility, when equipped with appropriate technology and adequate space, shall provide for the*

*use of services of the ICE Tele-Health Systems, inclusive of tele-radiology (ITSP), tele-psychiatry and tele-medicine.*

1. The cost of the equipment, equipment maintenance, staff training and credentialing (as outlined in the contract), arrangements for x-ray interpretation and administration by a credentialed radiologist; and data transmission to and from the detention facility, shall be provided by the facility and charged directly to ICE.
2. The facility administrator shall coordinate with the ITSP to ensure adequate space is provided for the equipment, connectivity is available, and electrical services are installed.
3. Immediate 24-hour access, seven days a week, to equipment for service and maintenance by ITSP technicians shall be granted.
4. A qualified tele-health coordinator shall be appointed and available for training by the ITSP. Qualified, licensed and credentialed medical staff shall be available to provide tele-health services as guided by state and federal requirements and restrictions.

## Medical Forms:

- **Appendix 4.3.A: Intake Screening**
- **Appendix 4.3.B: Physical Examination/Health Appraisal**
- **Appendix 4.3.C: Medical Transfer Summary**

# INTAKE SCREENING

## Identification

| |
|---|
| Patient was identified by (check 2 sources): ☐ Wrist Band ☐ Picture ☐ Verbally ☐ ID Badge ☐ Other: |
| Chaperone Present? ☐ Yes ☐ No If yes, give chaperone name: |
| Date of arrival at facility: Time of arrival: Time of initial screening: |
| If transferred from another facility, did medical transfer summary accompany the patient? ☐ Yes ☐ No ☐ Not Applicable |
| Was the Pre-Screening Note reviewed? ☐ Yes ☐ No |

## Subjective

### Communication Assessment:

| |
|---|
| What language do you speak? ☐ English ☐ Spanish ☐ Other: |
| Interpreter provided? ☐ Yes ☐ No If yes, name or INT number: |
| If No, patient speaks: ☐ English fluently ☐ Provider fluent in patient's native language ☐ No interpreter available at this time |
| Do you have any difficulty with: ☐ Hearing ☐ Speech ☐ Vision Check if yes. If yes, what accommodation do you need to help you read, communicate, or navigate the facility? |

### Disability Screening:

| |
|---|
| Do you have any difficulty with walking, standing, or climbing stairs? ☐ Yes ☐ No If yes, explain: |
| Do you have any difficulty reading or writing? ☐ Yes ☐ No If yes, explain: |
| What was the highest grade completed in school? |
| Do you have any difficulty understanding directions? ☐ Yes ☐ No If yes, explain: |

### Medical Screening:

| | | | |
|---|---|---|---|
| How do you feel today? (Explain in his/her own words) | | | |
| Are you currently having any pain? ☐ Yes ☐ No If yes, complete pain assessment below | | | |
| a. Character of pain: | b. Location: | c. Duration: | d. Intensity: (0-10 pain scale) |
| e. What relieves pain or makes it worse? | | | |
| Do you have any current or past medical problems? ☐ Yes ☐ No If yes, explain: | | | |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

**Medical Screening (continued)**

| |
|---|
| Are you currently or in the past year have you taken any medication on a regular basis, including over the counter and herbal? ☐Yes ☐No<br>If yes, list medications: |
| Do you have your medications with you? ☐Yes ☐No If yes, list medications and disposition: |
| Do you have any allergies to medication or food? ☐Yes ☐No If yes, list all: |
| Are you now or have you ever been treated by a doctor for a medical condition to include hospitalizations, surgeries, infectious or communicable diseases? ☐Yes ☐No If yes, explain: |
| Do you now or have you ever had Tuberculosis (TB)? ☐Yes ☐No |
| In the past 2 months, have you experienced any of the following signs or symptoms continuously for more than 2 weeks:<br>Cough? ☐Yes ☐No Coughing up blood? ☐Yes ☐No Chest pain? ☐Yes ☐No Loss of appetite? ☐Yes ☐No<br>Fever, chills, or night sweats for no known reason? ☐Yes ☐No Unexplained weight loss? ☐Yes ☐No |
| Symptom screening with positive responses(s) is concerning for active TB: ☐Yes ☐No If yes, explain: |
| Referred to provider for further evaluation. ☐Yes ☐No |
| Have you had any recent sudden changes with your vision or hearing? ☐Yes ☐No If yes, explain: |
| Do you have any specific dietary needs? ☐Yes ☐No If yes, explain: |
| Have you traveled outside of the US within the past 30 days? ☐Yes ☐No If so, where? |
| Have you ever had or have you ever been vaccinated against Chicken Pox? ☐Yes ☐No ☐Admits prior infection |

**LGBT Screening**

| |
|---|
| Are you gay, lesbian, bisexual, transgender, intersex or gender non-conforming? ☐ Yes ☐ No |
| If transgender, what is your gender self-identification? |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

**Female Patient Only**

| |
|---|
| Are you pregnant? ☐ Yes ☐ No ☐ Not Applicable If yes, date of last menstrual period: |
| Are you currently breastfeeding? ☐ Yes ☐ No If yes, when is the last day you breastfed? |
| Have you had unprotected sexual intercourse in the past 5 days? ☐ Yes ☐ No<br>If yes, would you like to speak to a medical provider about emergency contraception to prevent a possible pregnancy? ☐ Yes ☐ No<br>**If yes, contact a medical provider immediately for guidance.** |

**Oral Screening**

| |
|---|
| Are you having any significant dental problems? ☐ Yes ☐ No If yes, explain: |
| Do you have dentures, partials, braces, etc? ☐ Yes ☐ No If yes, do you have these items with you? |

**Mental Health Screening**

| |
|---|
| Have you ever been diagnosed with mental illnesses or mental health conditions? ☐ Yes ☐ No If yes, what illness? |
| Have you ever received counseling, medication or hospitalization for mental health problems (to include outpatient treatment)?<br>☐ Yes ☐ No If yes, explain.<br>**Refer for follow-up and appropriate treatment as necessary.** |
| Do you have a history of self-injurious behavior? ☐ Yes ☐ No If yes: ☐ Cutting ☐ Self-mutilation ☐ Other<br>Most recent **If yes, refer for follow-up and appropriate treatment as necessary.** |
| Have you ever tried to kill or harm yourself? ☐ Yes ☐ No If yes, when did the attempt occur?<br>Method: ☐ Gun ☐ Hanging ☐ Cutting skin ☐ Pills ☐ Other<br>**If attempt was within the last 90 days, make referral to mental health immediately.** |
| Are you currently thinking about killing or harming yourself? ☐ Yes ☐ No **If yes, make referral to mental health immediately.** |
| Do you have a history of assaulting or attacking others? ☐ Yes ☐ No |
| Do you know of someone in this facility whom you wish to attack or harm? ☐ Yes ☐ No<br>If yes, who is this person? **If yes, make referral to mental health immediately.** |
| Do you now or have you ever heard voices that other people don't hear, seen things or people that others don't see, or felt others were trying to harm you for no logical or apparent reason? ☐ Yes ☐ No If yes, explain: |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

**Sexual Abuse and Assault Screening**

\\\\\

| |
|---|
| Have you been a victim of physical or sexual abuse or assault? ☐ Yes ☐ No If yes, explain:<br><br>**If yes, refer for medical or mental health evaluation as appropriate.** |
| Do you feel that you are in danger of being physically or sexually assaulted while you are in custody? ☐ Yes ☐ No If yes, explain:<br><br>**If yes, refer for follow-up and appropriate treatment as necessary.** |
| Have you ever sexually assaulted or abused another person? ☐ Yes ☐ No If yes, explain:<br><br>**If yes, refer for medical or mental health evaluation as appropriate.** |

**Trauma History Screening**

| | | | | |
|---|---|---|---|---|
| Have you had a physical or emotional trauma due to abuse or victimization? ☐ Yes ☐ No | | | | |
| Have you ever experienced, witnessed or been confronted with an event that involved actual or threatened death or serious injury (can include domestic violence, sexual assault, robbery, natural disaster, war, serious illness, terrorism). ☐ Yes ☐ No | | | | |
| If yes, answer the following: | | | | |
| • Was your response to this event intense fear, helplessness or horror? | ☐ No | ☐ Some | ☐ Moderate | ☐ Extreme |
| • Has this experience caused significant distress or impairment in your life? | ☐ No | ☐ Some | ☐ Moderate | ☐ Extreme |
| • Has it affected your interpersonal relationships, work or other areas? | ☐ No | ☐ Some | ☐ Moderate | ☐ Extreme |
| • Is this experience currently causing significant distress or impairment in your life? | ☐ No | ☐ Some | ☐ Moderate | ☐ Extreme |
| **If the patient experienced any of the above, refer for follow-up and appropriate treatment as necessary.** | | | | |

**Cultural/Religious Assessment**

| |
|---|
| Is there anything important to know about your religious or cultural beliefs that are of concern to you while in detention? ☐ Yes ☐ No<br>If yes, explain: |

**Substance Use/Abuse Screening**

| | |
|---|---|
| Have you ever been treated for drug and/or alcohol problems? | ☐ Yes ☐ No |
| Have you ever suffered withdrawal symptoms from drug and/or alcohol use? | ☐ Yes ☐ No |
| Are you able to stop using drugs or alcohol if you want? | ☐ Yes ☐ No |
| Have you ever blacked out or experienced memory loss from drinking or drug use? | ☐ Yes ☐ No |
| Have drug or alcohol use negatively impacted your life (family, work, relationships, criminal charges)? | ☐ Yes ☐ No |
| If yes to any of the above questions, explain:<br><br>**Refer for follow-up and appropriate treatment as necessary.** | |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

**Substance Use/Abuse Screening (continued)**

In the past three months, have you used tobacco, alcohol, illegal drugs, or misused prescription drugs? ☐Yes ☐No

If yes, complete the following (refer for follow-up and appropriate treatment as necessary).

| Substance Used/Route of Use | Date of Last Use | Amount/Quantity Last Used |
|---|---|---|
| | | |
| | | |
| | | |

## Objective

Patient does not appear to have abnormal physical, mental, and/or emotional characteristics. ☐Yes ☐No

Patient does not appear to have barriers to communication. ☐Yes ☐No

Patient is oriented to: Person ☐Yes ☐No Place ☐Yes ☐No Time ☐Yes ☐No

If you observe any of the following, check the appropriate box and document findings below:

Appearance: ☐Sweating ☐Shaking/tremors ☐Anxious ☐Disheveled ☐Ill appearance
Findings:

Behavior: ☐Disorderly ☐Appropriate ☐Insensible ☐Agitation ☐Inability to focus/concentrate Findings:

State of Consciousness: ☐Alert ☐Responsive ☐Lethargic
Findings:

Ease of Movement: ☐Body deformities ☐Gait
Findings:

Breathing: ☐Persistent cough ☐Hyperventilation
Findings:

Skin: ☐Lesions ☐Jaundice ☐Rashes ☐Infestations ☐Nits (lice) ☐Bruises ☐Scars ☐ ☐Tattoos Needle Marks or Indications of Drug Use Findings:

Developmental or Physical Disabilities: ☐Developmental Delay ☐Para/quadriplegia ☐Stroke ☐Amputation ☐Cardiac condition
Findings:

Assistive Devices: ☐Glasses/Contacts ☐Hearing aid(s) ☐Denture(s)/Partial(s) ☐Orthopedic brace ☐Prosthetic ☐Cane
Findings:

☐None Observed

Comments/Other Findings:

**Vital Signs**

T ________ P _________ Resp _________ BP _________ HT ________ WT ________ HCG Results: ☐Pos ☐Neg ☐N/A

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Assessment

**Initial Medical Screening:**

| |
|---|
| ☐ No findings requiring referral |
| ☐ Findings requiring referral identified. See disposition below. |
| ☐ List all findings: |

## Plan

**Disposition:**

| |
|---|
| ☐ General population |
| ☐ General population with referral for: ☐ Medical ☐ Mental health care |
| ☐ Isolation until medically evaluated |
| ☐ Referral for immediate: ☐ Medical ☐ Mental health ☐ Dental care |
| Details of referral: |

**Care/Intervention/Follow-up:**

| |
|---|
| ☐ Physical examination/Health Assessment will be performed within 14 days. |
| ☐ Physical exam will be scheduled for patient. |
| ☐ Tuberculin Skin Test (TST) administered ☐ Left forearm ☐ Right forearm |
| ☐ Chest X-Ray (CXR) completed with appropriate shielding |
| ☐ TST or CXR not needed. Transfer Summary accompanying patient documents negative screening within timeframe allowed by policy. |
| ☐ The following care/treatment was provided during this Intake Screening. |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

**Patient Education:**

| |
|---|
| ☐ Tuberculosis screening and need for tuberculin skin test (TST) or chest x-ray (CXR) explained to patient prior to performance. |
| ☐ Access to medical, dental, and mental health care explained to patient as well as grievance process. |
| ☐ Given the Dealing with Stress brochure in language. |
| ☐ Given the Medical Orientation brochure in language. |
| ☐ Given the Health Information brochures in language. |
| ☐ Patient verbalized understanding of teaching or instruction provided. |
| ☐ Patient was asked if he or she had any additional questions and all questions were addressed. |
| ☐ Female ONLY: Educated and provided brochure describing female medical and mental health services related to pregnancy, terminated/miscarried pregnancies, contraception, family planning and age-appropriate gynecological health care. |
| ☐ Other education provided: |

| Provider's Signature | Stamp / Printed Name | Date | Time |
|---|---|---|---|
| Reviewer's Signature | Stamp / Printed Name | Date | Time |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

# Physical Examination/Health Appraisal

Patient was identified by (check 2 sources): □ Wrist Band, □ Picture, □ Verbally, □ ID Badge, □ Other ____________________
Chaperone Present? □ Yes □ No If yes, give chaperone name: ___________________

**Communication Assessment:**
What language do you speak? □ English, □ Spanish, □ Other: _____________________
Interpreter provided? □ Yes □ No If yes, Name or INT#:_____________________________________
Detainee speaks □ English Fluently; □ Provider fluent in patient's native language; □ No interpreter available at this time

Do you have any difficulty with □ hearing, □ speech or □ vision? Check if Yes.
If yes, what accommodations, do you need to help you read, communicate, or navigate the facility? _________________

**Subjective:**

| Current Significant Medical Problems | Date Problem began | Current Status |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**Current Medications including OTC and Herbal**:

| Name | Dose | Route | Frequency |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Allergies:**

Medications/Food/Environmental: List All: ______________________________________________________________\

**Pain Assessment**

Are you currently in pain? □ Yes □ No If yes, pain began when?____________________________ Intensity: (0/10 scale)_______________
Character of Pain:__________________________ Location:______________________________________________
Duration:_____________________________________
Has anything you have done or tried in the past relieved the pain or made it worse? □ Yes □ No
If yes, explain_______________________________________________________________________________________________

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Physical Examination/Health Appraisal (con't)

**Disability**

Do you have any difficulty with walking, standing, or climbing stairs? □ Yes □ No
If yes, do you use a wheelchair, walker, cane or crutches? ______________________________________________

Have you ever had an injury to your head or brain which resulted in the loss of consciousness and/or recurring headaches, dizziness, confusion or memory loss? □ Yes □ No If yes, when was the injury? mm/yyyy _________________________
Can you read? □ Yes □ No If yes, in which language? _____________________ Do you have difficulty reading? □ Yes □ No
Can you write? □ Yes □ No If yes, in which language? _____________________ Do you have difficulty writing? □ Yes □ No
What was the highest grade you completed in school? ________________
Do you have difficulty understanding directions? □ Yes □ No
If yes, does someone normally assist you with any regular tasks of daily living? __________________________________

**Medical History** Has a medical professional ever diagnosed you with any of the following?

| | | | |
|---|---|---|---|
| ☐Yes ☐No Asthma | ☐Yes ☐No Cardiovascular disease | ☐Yes ☐No Tuberculosis | Comment: **Type |
| ☐Yes ☐No Cancer | ☐Yes ☐No Kidney Disease | ☐Yes ☐No Stroke | |
| ☐Yes ☐No HIV | ☐Yes ☐No Hyperlipidemia | ☐Yes ☐No Hepatitis** | |
| ☐Yes ☐No Seizures | ☐Yes ☐No Diabetes | ☐Yes ☐No Sexually Transmitted Infections** | |
| ☐Yes ☐No Hypertension ☐Yes ☐No Sickle Cell Anemia | | | |
| Varicella □ Yes □ No ☐ Admits to prior infection ☐ Admits being vaccinated ☐ History denied at physical exam | | | |
| Other | | | |

**Surgical/Hospitalization History**:

| Surgery or reason for hospitalization | When (mm/yyyy) |
|---|---|
| | |
| | |
| | |
| | |

**Dental**

Do you have any significant dental problems? ☐No, ☐Cavity, ☐ Broken tooth, ☐Infection, ☐Broken jaw, ☐ Other______________________
Do you have any dental prosthesis? ☐None, ☐Full upper denture, ☐full lower denture, ☐partial denture upper, ☐partial denture lower, ☐braces, ☐retainer

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Physical Examination/Health Appraisal (con't)

**Family History**

Asthma □ Yes □ No Hypertension □ Yes □ No Diabetes □ Yes □ No Cardiovascular Disease □ Yes □ No
Cancer □ Yes □ No Tuberculosis □ Yes □ No Stroke □ Yes □ No Other: ______________________________
Breast or gynecological problems □ Yes □ No

**Female Only**

**OB History:**
Have you ever been pregnant? □No □Yes #Pregnancies_____________ #C-Sections_____________
#Live Births ______#Full Term_____#Pre-Term_______ #Abortions____ #Miscarriages______ #Living_______
Are you pregnant? ☐No □Yes
Are you currently receiving prenatal care? □No □Yes Where? ____________________________________________
Have you ever been told that you had a 'high risk' pregnancy? If yes, what was the reason?
______________________________________
Are you currently breast feeding? □No □Yes
If yes, how old is the nursing child? ____________ When was the last time you breast fed? (mm/dd/yyyy)__________

**GYN History:**
When was the first day of your LMP? __________________ If more than 30 days, why?
__________________________________________
Do you have a history of breast or gynecological problems? □No □Yes Explain______________________________
Do you use birth control? □No □Yes What type? ___________________________________ When was the last time you used it? ________
When was your last PAP smear? _________________________ If known, results_____________________________

**Sexual Abuse and Assault/Vulnerabilities**

Have you ever been a victim of physical abuse? □No □Yes
Have you ever been a victim of sexual abuse or assault? □No □Yes
If yes, refer patient for medical evaluation in two working days or for mental health evaluation in 72 hours.

Are you gay/ lesbian, bisexual, transgender, intersex or gender non- conforming? ☐Yes ☐No
If transgender, what gender do you identify with______

Do you believe you are vulnerable to sexual abuse or assault in ICE custody? ☐Yes ☐No If yes, why?___________________
If yes, implement treatment plan.

Have you ever been involved in an incident where you sexually abused others? ☐Yes ☐No
If yes, refer patient for medical evaluation in two working days or for mental health evaluation in 72 hours.

**Mental Health**

Do you have a history of:
Manic episodes ☐Yes ☐No Depression ☐Yes ☐No Psychotropic medications ☐Yes ☐No
Severe anxiety ☐Yes ☐No Psychosis ☐Yes ☐No Violence towards others ☐Yes ☐No
Suicide attempts/gestures ☐Yes ☐No

Are you currently having any mental health issues? ☐Yes ☐No If yes, explain problem and date problem began __________
____________________________________________________________________________________________

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Physical Examination/Health Appraisal (con't)

**Social History**

**Drug Use History:**

Have you used drugs other than those for medical reasons in the past 12 months? ◻No ◻Yes If yes, what?

PCP ◻No ◻Yes Ketamine ◻No ◻Yes Marijuana ◻No ◻Yes Prescription Opiates ◻No ◻Yes

LSD ◻No ◻Yes Ecstasy ◻No ◻Yes Methamphetamine ◻No ◻Yes

Heroin ◻No ◻Yes Route: Injected ◻No ◻Yes Intranasal ◻No ◻Yes Smoked ◻No ◻Yes

Cocaine ◻No ◻Yes Route: Injected ◻No ◻Yes Intranasal ◻No ◻Yes Smoked ◻No ◻Yes

When did you last use? _________________ Are you having any withdrawal symptoms? ◻No ◻Yes If yes, which apply?

◻Nausea ◻Vomiting ◻Diarrhea ◻Chills ◻Sweating ◻Insomnia ◻Aches & pains ◻ Anxiety

Have you ever gone through withdrawal from drugs? ◻No ◻Yes If yes, when? ___________________

Are you currently in a drug treatment program? ◻No ◻Yes If yes, Name of program? ____________________________

Type of Program: ◻Detox ◻Methadone ◻Residential Treatment ◻Outpatient ◻12 Step◻ Other

**Alcohol Use History:**

Do you drink alcohol? ◻ No ◻Yes If yes, type? ◻Beer ◻Malt liquor ◻Wine ◻Liquor

How often do you drink? ◻ Daily ◻Weekly ◻Monthly ◻Rarely

How much do you drink when you drink? _____________________________________

Do you notice over time that you need to drink more for the same effect? ◻No ◻Yes

When was your last drink? ____________________________________

Are you having any withdrawal symptoms? ◻No ◻Yes If yes, which apply? ◻Headache ◻Fever ◻Nausea

◻Vomiting ◻Insomnia ◻Tremor ◻Hallucinations ◻Convulsions

Have you ever gone through alcohol withdrawal in the past? ◻No ◻Yes How long ago? _____________________

Have you ever been in treatment for alcohol use? ◻No ◻Yes If yes, when? ___________________________

What type of program? ◻Outpatient ◻Inpatient

Have you ever been convicted for driving under the influence of alcohol? ◻No ◻Yes If yes, when? _______________

**Tobacco History:**

Have you ever used tobacco products? ◻No ◻Yes If yes, please answer the following questions:

Do you currently use tobacco products? ◻No ◻Yes If yes, what type of products? ◻ Cigarettes ◻Cigar ◻Pipe ◻Chewing tobacco

How long have you used tobacco products? ____________ How frequently did/do you use tobacco?___________

When did you last use tobacco products?_________________

Are you having any withdrawal symptoms from not using tobacco? ◻No ◻Yes If yes, what symptoms are you experiencing?

◻Cravings ◻Irritation ◻Anger ◻Increased Appetite ◻Weight Gain ◻Concentration Problems ◻Restlessness ◻Insomnia

◻Anxiety

**Preventative Medicine/Screening History**

Have you had screening for cancer? ☐Yes ☐No When? (mm/yyyy) ______________________

What type screening & results if known? ______________________________________________________________________

Have you had a mammogram? ☐Yes ☐No When? (mm/yyyy)____________________________ Results, if known_______________

Have you had a pap smear? ☐Yes ☐No When? (mm/yyyy)____________________________ Results, if known_________________

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Physical Examination/Health Appraisal (con't)

**OBJECTIVE:**
**Vital Signs**

T_________ P_________ R__________ BP_____________ HT___________ WT_____________
Visual Acuity (Snellen): Left____________________ Right__________________ Both___________________
Hearing: □ Grossly intact □ Other__________________________________________________

**General Physical Examination**

| | R = Refused | | NE = Not Evaluated |
|---|---|---|---|
| General | R | NE | Findings: |
| ENT | R | NE | Findings: |
| Dental | R | NE | Findings: |
| Neurological | R | NE | Findings: |
| Cardiac | R | NE | Findings: |
| Pulmonary | R | NE | Findings: |
| Gastrointestinal | R | NE | Findings: |
| Genitourinary | R | NE | Findings: |
| Extremities | R | NE | Findings: |
| Skin | R | NE | Findings: |
| Comments/Other Findings: | | | |

**Mental Status Examination**

| | |
|---|---|
| Orientation | Alert □No □Yes Oriented to person □No □Yes Place □No □Yes Time □No □Yes |
| Perceptions/ Thought Content | Perceptual disturbances? □No □Yes<br>If yes, □ Auditory hallucinations □ Visual hallucinations □ Delusions |
| Appearance | □ Appropriately dressed □ well groomed; □ Disheveled; □ Other |
| Posture | □ Erect; □ Stooped; □ Slouched; □ Other |
| Gait/Walk | □ Steady; □ Shuffle; □ Limp; □ Other |
| Movement | □ Appropriate; □ Tics; □ Repetitive; □ Rigid; □ Agitated; □ Slow; □ Other |
| Mood | □ Appropriate; □ Labile; □ Relaxed; □ Happy; □ Calm; □ Distressed; □ Angry; □ Agitated; □ Sad/Depressed; □ Fearful/Anxious; □Irritable, □ Other |
| Attitude | □ Cooperative; □ Uncooperative; □ Threatening; □ Evasive |
| Speech | □ Coherent; □ Incoherent; □ Pressured; □ Average speed; □ Rapid; □ Slow; □ Slurred; □ Mumbled; □ Talkative; □ Loud; □ Soft; □ Other |
| Intelligence | □ Appears normal; □ Appears developmentally delayed |
| Insight | □ Good; □ Impaired |
| Comments: | |

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

## Physical Examination/Health Appraisal (con't)

**Assessment:**

___Physical exam/health appraisal shows no significant medical, mental health or dental issues currently.

___Physical exam/health appraisal shows the following significant issues:

**Plan:**

Treatment including medications: ___________________________

_______________________________________________________________________________

_______________________________________________________________________________

_______________________________________________________________

Immunizations, Injections, Imaging, Labs:

Referrals:

Other

Preventative Medicine/Patient Education:
__Given the Staying Healthy brochure in the __________________ language.
__Verbally given instruction on dental hygiene.
__Provided with instruction appropriate to patient's health needs.
__Patient verbalized understanding of teaching or instructions provided.
__Patient was asked if he/she had any additional questions, and any questions were addressed.
__Patient was instructed to return to medical clinic as needed.
__Patient was instructed to return to clinic for appointment.
__Health Assessment was rescheduled until [_______] to provide sign language interpreter for health assessment.
__Health Assessment was rescheduled until [_______] to provide foreign language interpreter for health assessment.
__Other:_____________________________________________________________________________

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival: | DOB: |
| Facility: | Sex: |

# MEDICAL TRANSFER SUMMARY

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival at Sending Facility: | DOB: |
| Sending Facility: | Sex: |

**1. General Information:**

Cleared for Travel by Ground Transportation: □ Yes □ No Date of Departure: ______________________

Cleared for Travel by Air Transportation: □ Yes □ No Final Destination, if known: ______________________

Reason for Transfer: □ Custody □ Medical Medical Escort required: □ Yes □ No If yes, type: □ Medical □ Psychiatric

**2. Current Medical, Dental, and/or Mental Health Diagnoses/Problems:** **URGENT**

______________________

______________________

______________________

______________________

**3. Allergies:** ______________________

**4. Current Prescribed Medications: List All (Name, Dosage, Directions in layman's terms)**

*Check off Medication Required for Care en Route*

| Medication | Dose | # Sent | Route | Instructions for use (include proper time for administration) | Stop Date |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

**5. TB Clearance Status for Transfer or Transportation**

Screening Modality *(Check all that apply and document below)*: ☐ CXR ☐ TST ☐ IGRA ☐ Symptom Screen

**CXR:** Date: ____________

TB Screening: ☐ Negative, not consistent w/TB ☐ Positive, consistent w/TB

**TST:** Administered Date**:** ____________ **TST** Read Date: ____________ Results: ______ mm induration

**IGRA:** Collection Date: ____________ Results: ☐ Positive ☐ Negative ☐ Indeterminate

**Symptom Screening** Date: ____________ Results: ☐ Positive ☐ Negative

Is the patient being treated for TB? ☐ No ☐ Yes, select options:
☐ Cleared for general detention population
☐ Not cleared for general detention population
☐ Being treated for TB, see attached TB Case Management documentation

## Medical Transfer Summary (con't)

**6. Healthcare Follow-Up:**

Recent (within 6 months) Test Results: ______________________________

Recent (within 6 months) Hospitalizations/Surgeries: ______________________________

Recommended Future Lab Work: ______________________________

Pending Specialty Appointment (s):______________________________

Recommended Specialty Appointment (s):______________________________

**Requires Immediate Follow Up**: ______________________________

**7. Special Needs Affecting Transportation: -- Use Standard Infection Control Precautions for all patients --**

Are there any medical, dental, or mental health condition that restricts the length of time the patient can be on travel status? □Yes □No

Reason(s) and maximum length of travel time: ______________________________

Does the patient have any special needs that escorting staff should be aware of? □Yes □No

If so, what? ______________________________

Equipment provided by: □ Medical Authority □ Other_______________ Equipment owned by: □ Medical Authority □ Other_______________

Patient will keep equipment upon arrival at destination? □Yes □No

Is there any medical equipment required to accompany the patient during travel? ☐ Yes ☐ No

If so, what? ______________________________

Are any special precautions required during transport? □Yes □No

Precautions needed for the patient: ______________________________

Precautions needed for the escorting staff: ______________________________

**8. Additional Comments** (Mark through if no comments are made): Attach additional pages or medical records as needed

| |
|---|
| |

**9. Release from custody: Attach □ Instructions for Requesting Complete Medical Records**
**□ Community Resource Information, if applicable**

Sending Facility Point of Contact: ______________________________

Sending Facility Contact Number: ______________________________

| Completed by Provider Printed Name | Date | Time | Provider Signature |
|---|---|---|---|

| | |
|---|---|
| Last Name: | First Name: |
| A#: | Country of Origin: |
| Date of Arrival at Sending Facility: | DOB: |
| Sending Facility: | Sex: |