**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Kary Diaz MARTINEZ

v.

PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,

Respondents.

Docket No.: 25-cv-11613

**AFFIDAVIT OF MIRIAM CONRAD, ESQ.**

I, Miriam Conrad, do hereby swear and affirm:

I submit this affidavit in support of Kary Diaz Martinez. The following statements are based on my personal observation or knowledge, except for those statements made on information and belief, as to which I am informed and believe to be true.

1. I am a member in good standing of the Massachusetts bar and represent an immigrant whom I shall refer to as John Doe in federal habeas proceedings. Mr. Doe was detained at Immigration and Customs Enforcement – Enforcement and Removal Operations field office located at 1000 District Avenue; Burlington, Massachusetts from May 31, 2025 until June 4, 2025.

2. Portions of this affidavit convey factual information I learned from communications with my client; no attorney-client protected legal advice is being disclosed.

3. On May 31, 2025, my client was arrested and detained by agents of U.S. Immigration and Customs Enforcement ("ICE") near his home in Massachusetts.

4. On the same day, ICE brought Mr. Doe to its Field Office located at 1000 District Avenue, Burlington, Massachusetts.

5. The next day, June 1, 2025, I attempted to visit Mr. Doe at the field office but was told I could not see him then.

6. After I spoke to the Assistant U.S. Attorney assigned to the habeas petition on June 3 and his immigration lawyer, Robin Nice, spoke to immigration officials, Mr. Doe was provided a phone call to Ms. Nice on June 3, his first opportunity to speak to a lawyer.

7. Mr. Doe told Ms. Nice that he was sick when he arrived, with a fever and congestion. He also reported that he had suffered symptoms of a possible concussion sustained a week or more earlier. He had requested medical attention but had not received any, not even a Tylenol.

8. His immigration lawyer and I reported this information to officials from ICE and the U.S. Attorney's Office on June 3. That night Mr. Doe was taken to a hospital where he received a CT scan that showed no evidence of a concussion. He was provided with a pillow, blanket, and Tylenol while at the hospital.

9. On or about June 4, after I spoke with the Assistant U.S. Attorney assigned to the habeas petition, a legal visit with Mr. Doe was arranged.

10. At about 5 p.m. on June 4, 2025, Mr. Doe's immigration counsel, Robin Nice, Esq., and I met with Mr. Doe for the first time.

11. Attorney Nice and I were brought into an office. Shortly afterward, ICE officers brought in Mr. Doe. We met with Mr. Doe in the office, while the ICE officers waited outside.

12. Mr. Doe reported that he was very tired and hungry. He said he had been sleeping on the floor, without access to a bed or a mattress since he arrived in Burlington on May 31. He had not been provided with a pillow and was given only a mylar sheet to use as a blanket. Mr. Doe reported that the lights were on all night. He had only been able to sleep for a couple of hours each night. He had shared a cell with more than 20 other men. There was no natural light in the cell. The room was hot and stuffy. Men took turn breathing in air from a crack under the door. He had not been allowed outside, except for his visit to the hospital. There was one toilet, located in a place that provided no privacy.

13. At some point, female detainees were brought in to share the same space. They later were moved.

14. Mr. Doe told us that after he returned from the hospital in the early morning hours of June 4, he was placed in a cell by himself. I asked an officer why this had been done and he replied that they thought Mr. Doe would be more comfortable by himself. I told the officer that this was not the case and requested that he be returned to the shared cell.

12. Mr. Doe told us that he had not been given access to a shower since his arrival, and had only been able to brush his teeth twice. He said he was given very little food, totaling less than 1,000 calories a day. Much of it was inedible.

Signed under the pains and penalties of perjury, this 5th day of June, 2025,

Miriam Conrad

Miriam Conrad