# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

KARY MIRIOSY DIAZ MARTINEZ,

                            Petitioner,

       v.

PATRICIA HYDE, Field Office Director, U.S.
Immigration and Customs Enforcement, Boston Field
Office; MICHAEL KROL, HSI New England
Special Agent in Charge; TODD LYONS, Acting
Director, U.S. Immigrations and Customs
Enforcement; KRISTI NOEM, U.S. Secretary of
Homeland Security,

                          Respondents.

Civil Action No. 1:25-cv-11613-BEM

## RESPONDENT'S OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS AND OPPOSITION TO EMERGENCY MOTION FOR RELEASE FROM DETENTION

Petitioner Kary Miriosy Diaz Martinez's ("Petitioner") takes two different approaches seeking the same relief — an Order from this Court requiring her immediate release from immigration detention. *See* ECF No. 1; ECF No. 8. Neither pleading, however, provides a basis for that relief, and both circumvent the Congressionally provided framework. Accordingly, as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 and this Court's Service Order,[1] ECF No. 6, Respondents Patricia Hyde, Michael Krol, Todd Lyons, and Kristi

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Noem ("Respondents") respectfully request that this Court deny Petitioner's Petition for a Writ of Habeas Corpus (ECF Nos. 1, 2), as well as her Emergency Motion for Release (ECF No. 8).[2]

## INTRODUCTION

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Here, Petitioner, who illegally crossed the southern border to the United States in 2024, fails to carry her burden to demonstrate that her detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution. Instead, ICE's detention of Petitioner is required by 8 U.S.C. § 1225(b). As explained by the Supreme Court, 8 U.S.C. § 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018).

Further, the Supreme Court and the U.S. Court of Appeals for the First Circuit have held that detention of applicants for admission like Petitioner is constitutional and such aliens are entitled only to the procedural protections and process provided by statute. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*") (Explaining that "an alien on the threshold of entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (Alien detained soon after illegally entering the United States "has only those rights regarding admission that Congress has provided by statute" and "the Due

---

[2] Petitioner filed her Emergency Motion without complying with Local Rule 7.1(a)(2), which is itself a sufficient basis to deny her motion.

Process Clause provides nothing more…"); *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) (Explaining that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress.").

Petitioner's detention comports with statute, regulation, and the Constitution and therefore this Petition must be dismissed.

## BACKGROUND

### A. Legal Background for Aliens Seeking Admission to the United States.

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5). An applicant for admission is subject to inspection by U.S. Customs and Border Protection and carries the burden of demonstrating his admissibility into the United States. *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f). The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival …." 8 U.S.C. § 1225(a)(1). As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry' into the United States." *Thuraissigiam*, 591 U.S. at 140. Stated another way, an "alien who arrives at a 'port of entry,' *i.e.*

3

a place where the alien may lawfully enter, must apply for admission. An alien [] who is caught trying to enter at some other spot is treated the same way." *Id.* at 108. Such applicants for admission — "even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139 (quoting *Mezei*, 345 U.S. at 215).

Pursuant to 8 U.S.C. § 1225, immigration officials have discretion to place applicants for admission in either expedited removal proceedings to pursue asylum under Section 1225(b)(1), or full removal proceedings under 8 U.S.C. § 1229a when an asylum application can be filed. *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 114 (D. Mass. 2020). Under either approach, section 1225 expressly mandates detention of such individuals "throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings*, 583 U.S. at 302; *Thuraissigiam*, 591 U.S. at 111 ("Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release.").[3] An applicant for admission is not entitled to release or a bond hearing by statute or regulation.

**B. Factual and Procedural Background.**

Petitioner is a native and citizen of the Dominican Republic who illegally entered the United States across the southern border without being inspected and admitted or paroled on or about April 1, 2024, near San Diego, California. *See* Declaration of Assistant Field Office Director, Keith Chan, ¶¶ 6-7, attached as Exhibit A. Petitioner was placed into removal

---

[3] An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act.")

proceedings and served with a Notice to Appear in the Boston Immigration Court on June 3, 2025, alleging that she was removable from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.* ¶ 7. On June 3, 2025, Petitioner appeared in the Boston Immigration Court, with counsel. *Id.* ¶ 8. The Department of Homeland Security ("DHS") moved to dismiss removal proceedings as Petitioner was subject to expedited removal proceedings pursuant to 8 U.S.C. § 1225. *Id.* Petitioner objected, and the IJ denied DHS's motion to dismiss. The IJ then continued the removal proceedings until May 19, 2026.  *Id.*

After her hearing, ICE administratively arrested and detained Petitioner on June 3, 2025, pursuant to 8 U.S.C. § 1225. *Id.* ¶ 9. Petitioner is currently in custody at the ICE ERO's Burlington Field Office — Boston Hold Room. *Id*. ¶ 10.

Petitioner filed this habeas petition on June 3, 2025, alleging that her arrest and detention violate the Fifth Amendment to the United States Constitution.  ECF No. ¶ 1 at 3.  The next day, Petitioner filed a Motion for Release from Detention. ECF No. 8.  Plaintiff seems to contend in that Emergency Motion, although the legal grounds are less clear, that her immigration arrest was an abuse of discretion, violated ICE's regulations, violated the Fourth Amendment to the United States Constitution, and deprived her of her right to due process, and that her conditions of detention at the ICE Field Office in Burlington, Massachusetts violates the Eight Amendment to the United States Constitution, and ICE's policy and standards. ECF No. 8 ¶¶ 6, 9, 10, 16.

On June 9, 2025, Respondent filed its Notice of Intent to Transfer Petitioner to the Chittenden Regional Correctional Facility in South Burlington, VT, as the Burlington, MA, facility is not equipped for long term detention. Chan Decl. ¶ 10.; *see also* ECF No. 12. Petitioner filed an Objection to that transfer on June 10, 2025, ECF No. 13, and the Court set a hearing for June 12, 2025, ECF No. 14.

## LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).  As explained by the Supreme Court, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

A habeas petitioner bears the burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treatises of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

### A.    Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1225(b).

Petitioner, as an "alien present in the United States who has not been admitted or who arrives in the United States," is an applicant for admission as defined by 8 U.S.C. § 1225(a)(1). An applicant for admission is subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), which mandates that Petitioner be detained "until removal proceedings have concluded." *Jennings*, 538 U.S. at 299; *see also id.* at 297 (section 1225(b) "*mandate[s]* detention of applicants for admission until proceedings have concluded. (emphasis added)). In declining to find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme Court explained

that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings."  *Id.*

ICE is therefore mandated by statute to detain Petitioner without access to a bond hearing while she is in full removal proceedings. The Board of Immigration Appeals, in *Matter of Q. Li*, 29 I. & N. 66 (2025), recently held that an alien with a factually and procedurally similar background to Petitioner was detained pursuant to 8 U.S.C. § 1225(b) and not eligible for a bond hearing.  In that case, the alien similarly crossed the southern border without being inspected and admitted or paroled.  *Id.* at 67. Years later, after being released, ICE arrested the alien and detained her for purposes of removal proceedings.  *Id.* The BIA determined that the alien was subject to detention under 8 U.S.C. § 1225(b), rather than 8 U.S.C. § 1226(a), and therefore ineligible to seek a bond hearing because the alien was an applicant for admission who had been arrested and detained while arriving in the United States.  *Id.* at 69.

Similarly, Petitioner's detention while she is in full removal proceedings before an IJ is mandated by 8 U.S.C. § 1225(b)(2)(A).

## B.    Petitioner's Arrest and Detention Was Lawful and Therefore Her Petition and Emergency Motion Must Be Denied

Petitioner's claim that her arrest and detention violate the Fifth Amendment's Due Process Clause (ECF No. 1 at 3) is without merit. The Supreme Court has held that applicants for admission such as Petitioner are only entitled to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140. Additionally, the Supreme Court has repeatedly held that "[d]etention during deportation proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Petitioner herself acknowledges in her Emergency Motion that "[t]he process due to her is the

process underway before the immigration court." ECF No. 8 ¶ 6. As Petitioner is being provided

all process that is due to her, her Petition and Emergency Motion must be denied.

    1.   **Applicants for Admission to the United States have Limited Due Process Rights**.

    The Supreme Court has long recognized that Congress exercises "plenary power to make

rules for the admission of foreign nationals and to exclude those who possess those characteristics

which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).  Pursuant to

that longstanding doctrine, "an alien seeking initial admission to the United States requests a

privilege and has no constitutional rights regarding his application, for the power to admit or

exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).  The

broad scope of the political branches' authority over immigration is "at its zenith at the

international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004).

Accordingly, "certain constitutional protections available to persons inside the United States are

unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693

(2001).

    Applicants for admission lack constitutional due process rights with respect to admission

aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it

is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not

within the province of any court, unless expressly authorized by law, to review [that]

determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). In *Mezei*,

for example, the Supreme Court held that a returning lawful permanent resident's detention at

the border without a hearing to effectuate his exclusion from the United States did not violate

due process. *Mezei*, 345 U.S. at 206. And even though he had resided in the United States

previously, he had since been "permanently excluded from the United States on security

grounds." *Id.* at 207. The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has affected an entry into the United States. *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40. The *Thuraissigiam* Court explained that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court held long ago that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country." *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are

apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *Id.* at 139-40.

Applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that aliens arrested after crossing the border illegally, such as Petitioner, have "only those rights regarding admission that Congress has provided by statute." *Id.* at 140. The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and seek parole from the agency. *Id.*

The First Circuit also held that detention of an alien seeking admission to the United States does not violate due process. *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). The appellate court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 345 U.S. at 212. Here, section 1225(b) makes plain that if a Notice to Appear is issued to place an applicant for admission into removal proceedings, such individual "shall be detained" during the course of such proceedings.

10

8 U.S.C. § 1225(b)(2)(A). As such, Petitioner is not entitled to release because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

District courts around the country routinely find no due process violation for the detention of individuals subject to 8 U.S.C. § 1225(b).[4] Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission.[5] This Court should apply the "century-old rule," reaffirmed in *Thuraissigiam*, and conclude that Petitioner's due process rights are coextensive with the rights provided to her under statute. In § 1225(b), and the INA's related regulatory provisions, Congress has afforded applicants for admission like Petitioner a variety of protections but

---

[4] *See Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-49 (S.D.N.Y. 2018) (holding that *Mezei* "is directly on point and controls this case" "because the immigration statues at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not require one here."); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) (explaining that *Mezei* remains "good law, and it dictates that for an alien who has not effected an entry into the United States" the statutory scheme is "due process as far as an alien denied entry is concerned."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights. Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested."); *Aslanturk v. Hott,* 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (Declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since Section 1225(b) does not provide for such hearing.).

[5] *See e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his constitutional right to due process does not extend beyond the rights provided by statute."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (denying habeas petition seeking a release or a bond hearing finding that "he does not have a constitutional right to any additional procedure."); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 126-28 (W.D.N.Y. 2021) (finding no procedural or substantive due process violation based upon Supreme Court's *Thuraissigiam* decision.).

excluded the possibility of bond hearings or release from detention other than through DHS's exercise of parole. Consequently, because Petitioner's statutory rights do not extend to a bond hearing or release as a matter of course, the Court must deny her request for release.

To the extent that Petitioner contends that she is not subject to detention under § 1225, but that she is instead subject to 8 U.S.C. § 1226, she must file a request for a bond hearing and make that argument to an Immigration Judge in the first instance. And, during such proceedings, her due process protections remain intact where the government the government is tasked with shouldering the burden of proof at such a bond hearing. *Hernandez-Lara v. Lyons* 10 F.4th 19, 39-41 (1st Cir. 2021). However, those claims are not appropriate to be presented in a habeas petition in the first instance. *Cf. Compere v. Riordan*, 368 F. Supp. 3d 164, 170-71 (D. Mass. 2019). Moreover, Congress has made clear that ICE's discretionary judgment regarding detention of an alien under § 1226 is not subject to judicial review. 8 U.S.C. § 1226(e). Therefore, to the extent Petitioner makes such a claim, this Court lacks jurisdiction to review ICE's arrest or detention of petitioner. *See Demore*, 538 U.S. at 516-17; *see also Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (Section "1226(e) precludes an alien from challenging a discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding his detention or release.") (cleaned up).[6]

---

[6] The First Circuit's decision in *Hernandez-Lara v. Lyons* is consistent with the Respondents' position. *See* 10 F.4th 19, 33-34 (1st Cir. 2021). There, the Court held that section 1226(e) did not strip the district court of jurisdiction to consider the broad constitutional question of who bears the burden of proof in a section 1226(a) bond hearing. The First Circuit explained that section 1226(e)'s jurisdiction stripping provision did not apply because "Hernandez does not challenge the IJ's ultimate exercise of discretion, but rather 'the extent of the Government's detention authority under the *'statutory framework'* as a whole." *Id.* (quoting *Jennings*, 583 U.S at 296) (emphasis added). Here, however, Petitioner does not challenge the statutory framework under which she was detained, but instead challenges ICE's ultimate exercise of its discretion to arrest and detain her under section 1226(a). As such, Section 1226(e) applies and strips judicial review of this challenge.

## 2. **Detention During Removal Proceedings is Constitutional**.

Regardless of the level of due process Petitioner is entitled to as an applicant for admission to the United States, her due process challenge to her brief detention fails as the Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional.

In *Demore*, the Supreme Court upheld the constitutionality of a statutory provision that requires mandatory detention during removal proceedings without access to bond hearings, even for lawful permanent residents. 538 U.S. at 522. The Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523; *Wong Wing v. U.S.*, 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."). The Court therefore re-affirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. The Court explained that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* The Court recognized as to due process concerns that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (citations omitted).

The *Demore* Court distinguished this case from *Zadvydas*, 533 U.S. 678 where the Court confronted a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. *Id.* at 527. The Court explained that unlike potentially indefinite detention at issue in *Zadvydas*, detention during removal proceedings has "a definite termination point" and therefore did not implicate due process concerns. *Id.* at 529. The Court

concluded its decision by explaining, once more, that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531.; *Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid"). As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").

Here, however, because Petitioner was only recently detained, and her detention is authorized by 8 U.S.C. § 1225(b) and does not violate the Constitution. Petitioner points to no statute, regulation, or case law that renders her arrest and detention unlawful under the INA or any other statute. Although she alleges that she "poses no danger to the community or flight risk," the Supreme Court rejected that such claims entitle an immigrant in the United States without lawful status to be released from detention on due process grounds. *See Demore*, 538 U.S. at 523-24 (citing *Carlson v. London*, 342 U.S. 524, 543 (1952).

Petitioner's claims that she is "eligible" to apply for her green card through a process called an I-601A waiver,[7] and "intends to apply for" asylum, do not forestall arrest, detention, and removal from the United States subject to a validly issued final order of removal. And, in

---

[7] Petitioner is incorrect that she is in the class of immigrants eligible to apply for a green card pursuant the settlement in *Calderon, et al. v. Mayorkas, et al.*, No. 18-cv-10225 (D. Mass., Settlement approved Jan. 16, 2025, ECF No. 677). The settlement in *Calderon* applied to immigrants with *final orders of removal* with U.S citizen spouses; Petitioner, however, does *not* have a final order of removal and is therefore not a part of the *Calderon* settlement class. *See id*. at ECF No. 664-1.

any event, the fact that an immigrant may be "eligible" or "intends" to apply for a green card or asylum does not shield them from detention or removal proceedings.[8]

## C.    Petitioner Has Failed to Exhaust Her Administrative Remedies

While Petitioner contends that he seeks to "vindicate [her] constitutional rights" by requesting that this Court order her release, ECF No. 1 ¶ 2, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Here, Congress has established a statutory framework where Petitioner can seek release from detention through a parole application before the Immigration Court. Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* This remains the case "whether a court approves or disapproves of an agency's *modus operandi*." *Id.*

Petitioner can also ask ICE to exercise its discretion and parole her from its custody. Petitioner does not explain whether she has sought parole from ICE prior to filing this habeas petition, but such possible avenue for release provides another means of due process and should be exhausted prior to making a claim that his due process rights were violated. *See Traore v. Decker*, No. 19-CV-4612 (ALC), 2019 WL 3890227, at *4 (S.D.N.Y. Aug. 19, 2019) (Explaining that "by failing to file an application for or even request[ing] parole, Petitioner has failed to exhaust his administrative remedies."); *Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as

---

[8] Nor does applying for a green card itself provide Petitioner any lawful immigration status in the United States or protection from removal proceedings. *See* USCIS Policy Manual, vol. 7, part B, ch. 3, § E – "Unlawful Immigration Status at Time of Filing (INA 245(c)(2))," *available at* https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-3 (last accessed June 5, 2025).

currently enforced, satisfies due process for arriving aliens because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding.")

### D. Petitioner's Challenge to Her Arrest is Improperly Raised via this Petition.

In both her habeas Petition and her Emergency Motion, Petitioner challenges the legality of her arrest. ECF No. 1 ¶¶ 1 and Count One; ECF No. 8 ¶ 7–9. However, once deportation proceedings have begun, as they have here, "the legality of the alien's detention can no longer be tested by way of a habeas corpus proceeding." *Arias v. Rogers*, 676 F.2d 1139, 1143-44 (7th Cir. 1982); *see also Min-Shey Hung v. United States*, 617 F.2d 201, 202-03 (10th Cir. 1980). Petitioner may present her unlawful arrest claims through a motion to suppress in Immigration Court, the BIA, and ultimately to a Court of Appeals, but is not entitled to immediate habeas relief in the district court. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1050-51 (1984) (explaining that motions to suppress may be available in immigration proceedings for "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained."); *see also Campbell v. Chadbourne*, 505 F. Supp. 2d 191, 197 (D. Mass. 2007) (finding that petitioner must have custody determination reviewed by immigration judge and pursue any appeal to the BIA before seeking habeas relief); *Aguilar v. U.S. Immigr. & Customs Enf't Chicago Field Off*., 346 F. Supp. 3d 1174, 1189 (N.D. Ill. 2018) (no Fourth Amendment violation in situation where ICE detainee could challenge arrest before immigration court); *Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) (no constitutional infirmity with immigration arrest because detainees could "could avail themselves of the administrative remedies" available to them to contest detention.). *Cf. Groccia*

*v. Reno*, 234 F. 3d 758, 762 (1st Cir. 2000) (affirming denial of habeas petition where petitioner did not first present his claims to immigration court).

Even assuming Petitioner could show an unlawful arrest (which she cannot for the reasons outlined above), Petitioner provides no caselaw to support her claim that an order of release via a habeas petition would be the proper remedy for the violation she alleges. District courts routinely hold that even assuming a habeas petitioner was unlawfully arrested by ICE, a motion to suppress in Immigration Court (and not a habeas petition) is the proper avenue to challenge that arrest, and that release from immigration is not an appropriate remedy because an individual's identity and immigration status cannot be suppressed. *See e.g.*, *H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (explaining that "even if the Court accepted Petitioner's argument that his initial detention was somehow unlawful, he is still not entitled to habeas relief."); *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *4 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018) ("Release from Jorge S.'s *current* detention because his detention *previously* had been unlawful would be a remedy ill-fitted to the specific injury alleged.") (emphasis in original); *Amezcua-Gonzalez v. Lobato*, No. C16-979-RAJ-JPD, 2016 WL 6892934, at *2 (W.D. Wash. Oct. 6, 2016), *report and recommendation adopted sub nom. Amezcua–Gonzalez v. Lobato*, No. C16-979-RAJ, 2016 WL 6892547 (W.D. Wash. Nov. 22, 2016) (finding that "even if petitioner's arrest amounts to an egregious Fourth Amendment violation, he is not entitled to habeas relief, and his petition should be denied.").

Here, Petitioner must, in the first instance, present her claims as to his alleged unlawful arrest to an immigration judge as part of a motion to suppress. *Jorge S.,* 2018 WL 6332717, at

*4. This Court, however, does not have jurisdiction over such claims and habeas relief is not a proper remedy. *See also Abel v. United States,* 362 U.S. 217, 230 (1960) ("Statues authorizing administrative arrest to achieve detention pending deportation have the sanction of time."); *Perez-Ramirez v. Norwood,* 322 F. Supp. 3d 1169, 1172 (D. Kan. 2018) (Denying habeas petition and finding no Fourth Amendment violation because "the legality of an arrest of an alien based upon a civil immigration violation is well-established.").

### E.    Petitioner's Claims Concerning Her Conditions of Confinement Do Not Entitle Her to Habeas Relief

Finally, Petitioner raises a host of other claims in her Emergency Motion, including that the conditions of detention violate ICE's policy and the Eighth Amendment to the United States Constitution. None of her claims warrant habeas relief, but instead may be presented through civil rights litigation. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1037-38 (W.D. Wash. 2019) ("To the extent petitioner seeks to recover from the allegedly unconstitutional nature—as opposed to duration—of his confinement, [her] claims do not belong in this immigration habeas action.") (citing *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement. A civil rights action, in contrast, is the proper method of challenging 'conditions of ... confinement.'")); *see also Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (finding that fact or duration of confinement must be pursued as habeas petition, whereas conditions of confinement is appropriate for civil rights action); *Schipke v. Van Buren*, 239 Fed. App'x 85, 85-86 (5th Cir. 2007) (noting that "allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions").

Notably, immigration proceedings are civil proceedings, and are not criminal, and — despite Petitioner's assertion otherwise — and are presumed to be "nonpunitive in purpose and

18

effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For this reason, the Eighth Amendment does not apply in civil immigration proceedings. *See Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.").

To the extent Petitioner contends that her detention is a violation of her substantive due process rights (which she does not expressly assert in either her habeas Petition or her Emergency Motion for Release), this too must fail. "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539. As the First Circuit has noted, "[t]he prompt execution of removal orders is a legitimate governmental interest which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32 (cleaned up). Accordingly, Petitioner cannot demonstrate that her immigration detention amounts to "punishment" sufficient to establish a violation of her substantive due process rights.

Fatally for her Emergency Motion, Petitioner has twice, through her counsel, rejected requests from ICE to transfer to a facility that ICE acknowledges is better suited for her care.[9] Petitioner is currently detained in ICE's Burlington (MA) Field Office — Boston Hold Room,

---

[9] On June 6, 2025, Petitioner's counsel informed Respondents' counsel that they would not consent to Petitioner's transfer to Port Isabel Detention Center in Los Fresnos, Texas. On June 10, Petitioner, through counsel, again objected to a transfer to the Chittenden Reginal Correctional Facility in South Burlington, Vermont.

which is a temporary arraignment not suited for long term housing. *See* ECF No. 12. Recognizing that transfer to another facility is in Petitioner's best interest, ICE sought Petitioner's consent to be moved, but Petitioner, through counsel, has twice declined. This refusal to relocate to a facility that can better serve her needs, despite her alleged concerns about the conditions at ICE's Burlington, MA Field Office, demonstrates that Petitioner's complaints are little more than pretext and do not amount to a substantive due process violation.

Petitioner is lawfully detained pursuant to statute, regulation, and the Constitution and this Court therefore lacks authority to order Petitioner's release from custody by extending the requested writ under 28 U.S.C. § 2241(c)(3) or granting her Emergency Motion for Release of Detention. Accordingly, Petitioner's request for emergency release and the issuance of a writ of habeas corpus must be denied.

## CONCLUSION

For the foregoing reasons, the Court should DENY Petitioner's Petition for Writ of Habeas Corpus and Request for Emergency Injunctive Relief (ECF No. 1), as well as her Emergency Motion for Release from Detention (ECF No. 8).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 11, 2025          By:    */s/ Anuj K. Khetarpal*
                                     Anuj Khetarpal
                                     Assistant United States Attorney
                                     United States Attorney's Office
                                     1 Courthouse Way, Suite 9200
                                     Boston, MA 02210
                                     Tel.: 617-748-3658
                                     Email: Anuj.Khetarpal@usdoj.gov

## CERTIFICATE OF SERVICE

I, Anuj Khetarpal, Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: June 11, 2025                    By:    */s/ Anuj K. Khetarpal*
                                               Anuj Khetarpal
                                               Assistant United States Attorney