UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KARY DIAZ MARTINEZ, <br><br> Petitioner, <br><br> v. <br><br> PATRICIA HYDE, et al., <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) 25-11613-BEM <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND DECISION
ON RESPONDENTS' MOTION FOR RECONSIDERATION**

**MURPHY, J.**

Petitioner Kary Diaz Martinez appeared as ordered in immigration court. At that hearing, the Government moved to dismiss the removal proceedings against her so that it could pursue expedited removal. The Government's motion was denied. Nevertheless, Ms. Diaz Martinez was detained. This Court found that detention unlawful and ordered her release. The Government has since moved for reconsideration, substantially clarifying its legal position. Considering these arguments, the Court revisits its reasoning but ultimately comes to the same conclusion. Accordingly, and for the reasons stated herein, the Court will deny the Government's motion.

**I.    Background**

    **A.    Factual Background**

On or about April 1, 2024, Petitioner was encountered by United States Border Patrol near San Diego, California. Dkt. 16-1 ("Chan Decl.") ¶ 7. An officer determined that Petitioner had entered the United States "at an unknown time and place," *id.*, and issued her a Notice to Appear in immigration court for "removal proceedings under section 240 of the Immigration and

Nationality Act," 8 U.S.C. § 1229a ("section 1229a"), Dkt. 21 at 1.[1] Specifically, Petitioner was charged with being removable as "an alien present in the United States without being admitted or paroled." Dkt. 21 at 1. Petitioner was thereafter released on an Order of Release on Recognizance, "[i]n accordance with section 236 of the Immigration and Nationality Act," 8 U.S.C. § 1226 ("section 1226"). Dkt. 27 at 18.

On June 3, 2025, Petitioner appeared as ordered in immigration court. Chan Decl. ¶ 8. At that hearing, the Government moved to dismiss the removal proceedings pending against her, arguing that Petitioner was amenable to expedited removal. *Id.* The immigration judge denied the Government's motion and continued the removal proceedings until May 2026. *Id.*

After the hearing, Petitioner was arrested and detained, according to Respondents, "pursuant to 8 U.S.C. § 1225" ("section 1225"). *Id.* ¶ 9. Immigration and Customs Enforcement, Enforcement and Removal Operations "ha[d] not issued expedited removal paperwork to the Petitioner." *Id.* Shortly thereafter, Petitioner sought a writ of habeas corpus in this Court and moved for release from detention. Dkts. 1, 8.

B.     **Prior Proceedings**

The Court held a hearing on June 12, 2025. Dkt. 17. At that hearing, the precise legal basis for Petitioner's confinement appeared plainly uncertain, both to the attorneys present and to

---

[1] A Notice to Appear is a charging document that vests jurisdiction with the immigration court for further proceedings. *See* 8 C.F.R. § 1003.14. In her Notice to Appear, Petitioner is more specifically alleged with having "arrived in the United States at or near San Ysidro, CA, on or about April 1, 2024." Dkt. 21 at 1 (emphasis removed).

the Court.² Accordingly, the Court ordered Respondents to clarify the authority for Petitioner's detention and to produce any documents issued to Petitioner concerning her detention. Dkt. 17; Dkt. 19 at 1.

On or about the deadline for that production, Respondents produced Petitioner's original April 2, 2024 Notice to Appear and clarified their position that Petitioner was "subject to mandatory detention pursuant to 8 U.S.C. § 1225." Dkt. 21; Dkt. 19 at 1. Respondents further stated, "that there may be a file that was created for this Petitioner that may have traveled with Petitioner when she was transferred," and that, "[a]gency counsel ha[d] not yet been able to locate that file and [wa]s still searching for it." Dkt. 19 at 2. Respondents requested one additional business day (three calendar days) "to look for and produce any additional documents that may be contained in Petitioner's file." *Id.* The Court granted Respondents' request. Dkt. 20. Three days later, in an email to the Courtroom Clerk, Respondents confirmed that they had no additional documents to produce.

---

² *See, e.g.*, June 12, 2025 Rough Transcript ("Tr.") at 32:22–33:19 ("THE COURT: . . . Right now, how does she know whether she's detained under [section] 1225 or 1226? [RESPONDENTS' ATTORNEY]: I would have to check, your Honor, whether she was given a new notice to appear. That I do not know. And I just don't have that information in front of me."). This kind of confusion is apparently not limited to the present case. Only a few weeks ago, the Chief Judge for the District of Maine wrote:

> To assess Petitioner's due process challenge to detention, it would be useful to first determine precisely what statutory and regulatory provisions called for Petitioner's detention. The Government contends Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225. Petitioner contends that she was not actually detained under 8 U.S.C. § 1225(b), but under 8 U.S.C. § 1226(a), which generally calls for discretionary detention except for certain disfavored groups of noncitizens, such as criminal aliens. . . . It is a mystery why the answer to this riddle eludes the parties. Surely, the Government ought to at a minimum be able to direct us with metaphysical certainty to the statute under which Petitioner was detained. That even that baseline determination is cloaked in enigma is sadly in keeping with our Nation's immigration 'policy' and laws overall."

*De Oliveira v. Joyce*, 2025 WL 1826118, at *5 (D. Me. July 2, 2025).

### C.     Prior Order

The next day, the Court granted the petition. Dkt. 22. The Court found that, despite being ordered and having received additional time, Respondents were unable to produce any documents substantiating Petitioner's detention; that Petitioner had not been ordered removed under section 1225(b)(1); and that her detention was therefore unlawful. *Id.* at 4.

### D.     Present Motion

Respondents accuse the Court of "misapprehen[ding]" their legal position and of, in turn, "conflating" the relevant statutory subsections. Dkt. 25 at 2. More specifically, Respondents state that their position "was and is that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A)," *id.* at 9–10, but that the Court improperly applied section 1225(b)(1), "incorrectly equat[ing]" all of section 1225(b) with expedited removal, *id.* at 10–12.

Respondents further argue that the Court "impermissibly shifted the burden of proof to respondents" and "fail[ed] to recognize the distinction between immigration removal proceedings and immigration bond hearings." *Id.* at 2. The Court will address each point in turn below.

## II.     Discussion

At the outset, the Court welcomes this opportunity. "A smart man knows when he is right; a wise man knows when he is wrong." *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 390 (D. Del. 2025). Indeed, upon review of the hearing transcript and original briefing, it is fair and accurate to acknowledge that the parties and the Court, in and amongst themselves, often spoke at cross purposes. Of course, litigants have a duty to communicate their arguments "squarely and distinctly." *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (quoting *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)). Nevertheless, the Court's interest is in reaching the correct result and, to that end, takes no issue with revisiting this ruling.

A.     **<u>Basis for Detention</u>**

In their new motion, Respondents clearly state for the first time their position that Petitioner's initial encounter with Border Patrol—memorialized in the April 2024 Notice to Appear ("[t]he NTA provided to Petitioner")—is what establishes her as subject to mandatory detention under section 1225(b)(2)(A).[3]  Dkt. 25 at 8.

The record, however, does not support that conclusion.  Subject to exceptions not relevant here, section 1225(b)(2)(A) states:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Thus, for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an "examining immigration officer" must determine that the individual is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted."

Petitioner's Order of Release on Recognizance contradicts Respondents' assertion that her April 2024 Border Patrol encounter constituted an examination under section 1225.  *See* Dkt. 27 at 18.  While immigration officers routinely examine (or "inspect") non-citizen applicants, *see* 8 U.S.C. § 1225(a)(3), they also enjoy broad authority to interrogate and, in some circumstances, temporarily detain non-citizens within the United States without a warrant, *id.* § 1357(a)(1)–(2).  In other words, not every encounter with an immigration officer necessarily constitutes an examination under section 1225.  Petitioner's Order of Release does not indicate that she was

---

[3] The Court might be forgiven for previously understanding Respondents to base detention on a later-issued order, since they asked for three additional days to look for it.  *See* Dkts. 19–20.

5

examined or detained under section 1225 but instead explicitly premises her release on section 1226 ("[i]n accordance with section 236 of the Immigration and Nationality Act"):

> You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions:

*Id.*[4] Section 1226 governs a separate (non-mandatory) detention scheme applicable when an individual is "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); *cf.* Dkt. 21 at 1 (alleging that Petitioner was "present in the United States").

Respondents' contrary theory of the procedural history cannot make sense of Petitioner's release on recognizance because individuals detained following examination under section 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A) ("section 1182(d)(5)(A)")). Release on recognizance is not "humanitarian" or "public benefit" "parole into the United States" under section 1182(d)(5)(A) but rather a form of "conditional parole" from detention upon a charge of removability, authorized under section 1226. *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a non-citizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under section 1226, including because he was not an "arriving alien" under the regulations governing section 1225 examinations).

---

[4] The Order of Release on Recognizance is marked "Form I-220A (Rev. 08/01/07) N." Dkt. 27 at 18. A substantially similar version is available online. *See Order of Release on Recognizance*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf [https://perma.cc/HE5Y-LKLT]. The Court notes that Respondents did not produce this document.

This distinction reflects more than an officer's choice of paperwork because, although both styled as "parole," these two mechanisms serve fundamentally different purposes. Parole "into the United States," under section 1182(d)(5)(A), permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen "as if stopped at the border." *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). Conditional parole, under section 1226(a)(2)(B), instead releases a non-citizen already in the country from domestic detention. Here, "[i]t is apparent that [the Government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a). None of the forms issued to [Petitioner] makes any reference whatsoever to 'parole into the United States' under § 1182(d)(5)(A)." *See Ortega-Cervantes*, 501 F.3d at 1115. Indeed, given the fact that Petitioner was already "present in the United States," Dkt. 21 at 1, it would make little sense to talk about paroling her "into the United States," 8 U.S.C. § 1182(d)(5)(A). She was already here.

This fact distinguishes Petitioner's case from *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), upon which Respondents have substantially relied.[5] *See* Dkt. 16 at 7; Dkt. 25 at 12. In *Q. Li*, a non-citizen was arrested following examination under section 1225, as partially demonstrated by the fact that she was subsequently paroled into the United States under section 1182(d)(5)(A). *Q. Li*, 29 I. & N. Dec. at 66. Denying bond, the Board of Immigration Appeals affirmed the point highlighted by this Court, that "[t]he only exception permitting the release of aliens detained under [section 1225(b)] is the parole authority provided by [section 1182(d)(5)(A)]." *Id.* at 69. This distinction matters because, as mentioned above, immigration

---

[5] Courts must exercise "independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024). Nevertheless, these reasoned decisions may be considered as helpful guidance. *Id.* at 388 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)),

parole into the United States employs a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless "treated," for legal purposes, "as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (quoting *Mezei*, 345 U.S. at 215). Accordingly, when the *Q. Li* respondent's immigration parole was terminated upon issuance of a Notice to Appear, she was immediately "restored to the status that . . . she had at the time of parole." *Q. Li*, 29 I. & N. Dec. at 70 (quoting 8 C.F.R. § 212.5(e)(2)(i)). In other words, it was as if she had never entered the country at all. Non-citizens fictively paroled into the United States are in a fundamentally different and less protected position than "those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958); *cf. Thuraissigiam*, 591 U.S. at 140 (holding that non-citizen who had not "effected an entry" into the United States had not acquired constitutional protections (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

Indeed, *Q. Li* provides yet more illustration for why Respondents' theory of the procedural history cannot be squared with the facts—in *Q. Li*, parole under section 1182(d)(5)(A) was deemed terminated upon issuance of a Notice to Appear. *Q. Li*, 29 I. & N. Dec. at 70. That notice satisfied the requirement that termination of immigration parole under section 1182(d)(5)(A) be "upon written notice." *See* 8 C.F.R. § 212.5(e)(2)(i). By contrast, in this case, Petitioner does not seem to have been issued any notice of her parole's supposed termination. The most logical conclusion to draw from these facts is that Petitioner was not "parole[d] into the United States" "for urgent humanitarian reasons or significant public benefit" under section 1182(d)(5)(A) but rather, as her Order explicitly states, was released upon her own recognizance as a form of conditional parole under section 1226. *See also Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (B.I.A. 2023) (holding that an immigration judge erred in treating release on recognizance of non-citizens "detained soon after their unlawful entry" as constructive humanitarian parole where Government

8

had not followed the "procedures for parole under [section 1182(d)(5)]"); *Ortega-Cervantes*, 501 F.3d at 1115–16.

Petitioner's Notice to Appear likewise does not reflect either that her April 2024 encounter constituted an examination or that the Border Patrol officer determined her to be "seeking admission" at time of issuance.[6] *See* Dkt. 21.  Tellingly, Respondents' brief repeatedly elides or avoids section 1225(b)(2)(A)'s "seeking admission" language when quoting the statute, apparently treating it as mere surplusage of the "applicant" requirement.[7] *See* Dkt. 25 at 7, 9–10, 12, 13–14. Under section 1225, "applicant" is a term of art including all non-citizens "present in the United States who ha[ve] not been admitted." 8 U.S.C. 1225(a)(1).  Thus, it is Respondents' position that virtually every non-citizen not previously admitted to the United States is subject to mandatory detention, without the possibility of a bond hearing, regardless of how long or under what circumstances that person has maintained a presence in the United States.[8] Dkt. 25 at 6–8.

It is worth noting that such an approach would upend decades of practice.[9] Indeed, mandatory detention for all applicants has only been the official policy of the Department of Homeland Security ("DHS") for a few weeks, since July 8, 2025, when Acting Director of U.S.

---

[6] The Court relies on the factual determinations made by the Government's own agent and therefore need not reach the thornier issue of what an officer *could* have legally determined or done under these circumstances.  Following the Supreme Court's decision in *Thuraissigiam*, it is difficult to say at what point precisely—in terms of distance, time, or any other metric—an individual *must* be considered present in the United States. *See Thuraissigiam*, 591 U.S. at 139–40 (holding that 25 yards was insufficient to necessarily invoke constitutional protections, analogizing the petitioner in that case to an individual arriving at an international airport).

[7] Accordingly, if Respondents have any theory for how to reconcile the "seeking admission" language, different from this Court's, they have failed to present it in this case.

[8] For example, in *Rodriguez v. Bostock*, — F. Supp. 3d —, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025), the Government unsuccessfully argued that a grandfather who had lived in the United States for more than fifteen years and who had never been charged with a crime was properly detained without the possibility of a bond hearing under section 1225(b)(2)(A). *Id.* at *1, 12–16.

[9] *See* Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954) ("[Solicitor General]: . . . DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended.").

9

Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had "revisited its legal position:"[10]

> DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that [section 1225] of the Immigration and Nationality Act (INA), rather than [section 1226], is the applicable immigration detention authority for all applicants for admission.[11]

It has been estimated that this novel interpretation would require the detention of millions of immigrants currently residing in the United States.[12]

But Respondents' selective reading of the statute—which ignores its "seeking admission" language—violates the rule against surplusage and negates the plain meaning of the text. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("'[E]very clause and word of a statute' should have meaning." (quoting *Montclair v. Ramsdell*, 107 U.S.

---

[10] The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, WASHINGTON POST (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG]. The memorandum itself was subsequently leaked by legal advocacy groups. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AMERICAN IMMIGRATION LAWYERS ASSOCIATION, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC] (hereinafter, "Lyons Memo."). The admitted novelty of the Government's legal argument may shed some light on why the Petitioner and Court had such a difficult time recognizing it at first blush.

[11] The Court pauses on one other troubling part of the memorandum which states that ICE will "affirmatively cancel" notices of custody determination, issued on DHS Form I-286. Lyons Memo. at 2. These notices, which the Government intends to "cancel," "appl[y] by [their] terms only to custody determinations under [section 1226 and its accompanying regulations]." *Id.* Thus, they constitute clear evidence that—at least at some point in time—the Government treated the individual as subject to that authority, rather than section 1225, as it now argues. The memorandum goes on to state that these "cancel[lations]" may be subject to "a limited exception for certain habeas petitioners." *Id.* The Court cannot fathom why habeas petitioners should receive different treatment than non-petitioners, except that petitioners have the benefit of a federal court's oversight to ensure the legality of their process. Indeed, in this case, Petitioner's counsel presciently reasoned that "there was clearly a custody determination made pursuant to 1226," although none had been made available. Tr. at 24:10–13. The Court cannot say definitively whether there is a Form I-286, "cancel[led]" or otherwise, sitting in Petitioner's file. If there is, Respondents did not produce it, despite its apparent responsiveness to this Court's order. Dkt. 17. Perhaps this is why Respondents bafflingly split hairs over the fact that the "Electronic Clerk's Notes did not reflect [it] to be an *Order* of the Court." Dkt. 25 at 4 n.11 (emphasis in original); *but see id.* at 13 (stating that the Court "required Respondents" to produce documents). In any event, for purposes of this case, that the Government previously treated Petitioner as subject to section 1226, rather than section 1225, is demonstrated by her Order of Release on Recognizance, Dkt. 27 at 18, another document which Respondents did not produce.

[12] *See* Sacchetti & Leonnig, *supra* note 10.

147, 152 (1883)); *United States v. Abbas*, 100 F.4th 267, 283 (1st Cir. 2024) ("'We begin, as always, with the text of the statute' and read it 'according to its plain meaning at the time of enactment.'" (quoting *United States v. Winczuk*, 67 F.4th 11, 16 (1st Cir. 2023) (internal quotation marks removed))), *cert. denied*, 145 S. Ct. 319 (2024).  Here, the phrase "seeking admission" is undefined in the statute but necessarily implies some sort of present-tense action.[13] *See Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'" (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020))).

Petitioner's Notice to Appear indicates no such action.  Notably, the issuing officer appears to have explicitly *declined* to designate Petitioner as an "arriving alien," which is the active language used to define the scope of section 1225(b)(2)(A) in its implementing regulation. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any ***arriving alien*** who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)].") (emphasis added):[14]

☐ You are an arriving alien.
☒ You are an alien present in the United States who has not been admitted or paroled.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

---

[13] *Cf.* 8 U.S.C. 1225(a)(1) (arguably defining "applicant" as a status).

[14] The subsection is moreover titled, "***Arriving aliens*** placed in proceedings under section 240 of the Act or aliens referred for an asylum merits interview under § 208.2(a)(1)(ii) of this chapter."  8 C.F.R. § 235.3(c) (emphasis added).

Dkt. 21 at 1.[15]  Although in no way binding, an agency's implementing regulations can provide a useful reference point for understanding a statutory scheme, particularly where those regulations were "issued roughly contemporaneously with enactment of the statute and [have] remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024); *see also M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 27 (1st Cir. 2017).  Here, the regulation—which treats "arriving alien" as roughly interchangeable with an "applicant . . . seeking admission"—was promulgated mere months after passage of the statute, and the relevant subsection has never been changed.[16]  Under the regulations, an "arriving alien means an applicant for admission coming or attempting to come into the United States."  8 C.F.R. § 1.2.  In other words, an "arriving alien" is an "applicant" who is also *doing* something: "coming or attempting to come into the United States." *Id.*  This mirrors the text of section 1225(b)(2)(A), which applies where an individual is an "applicant" who is also *doing* something: "seeking admission."  "The use of the present progressive tense 'arriving,' rather than the past tense 'arrived,' implies some temporal or geographic limit." *M-D-C-V-*, 28 I. & N. Dec. at 23.  Here, the issuing officer apparently decided that Petitioner was not within those limits.[17]

This active construction of the phrase "seeking admission" is in harmony with the Government's treatment of similar language in at least one other immigration context.  *See* [U.S.

---

[15] The Notice to Appear is marked "DHS Form I-862 (6/22)," a blank copy of which is available online. *Department of Homeland Security Notice to Appear*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://portal.ice.gov/pdf/I-862NTA(English)version6.2022.pdf [https://perma.cc/N6E5-B3PS].

[16] Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 1997 WL 93131 (Mar. 6, 1997) (implementing provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

[17] As discussed further below, Petitioner has also attached several unpublished decisions from the Board of Immigration Appeals, including a 2023 decision holding that a non-citizen charged as "'an alien present without permission or parole' . . . is not an arriving alien, and is ['thus'] not subject to the mandatory custody provisions of [section 1225(b)(2)(A)]." Dkt. 27 at 27 (cleaned up).

Citizenship and Immigration Services ("USCIS")] Policy Manual, vol. 8, pt. O, ch. 6 (providing guidance as to 8 U.S.C. § 1182(a)(9)(B) ("section 1182(a)(9)(B)"). Under section 1182(a)(9)(B), a non-citizen who is unlawfully present in the United States and then departs or is removed is inadmissible for a certain period if he "again seeks admission." *See id.* § A (quoting section 1182(a)(9)(B)). The USCIS guidance further clarifies:

> The statutory 3-year or 10-year period begins to run on the day of departure or removal (whichever applies) after accrual of the period of unlawful presence. This statutory period continues to run, without interruption, regardless of whether or how the alien returned to the United States during the 3-year or 10-year period. ***Thus, it is immaterial whether the alien has spent the applicable statutory 3-year or 10-year period in or out of the United States. As long as the alien again seeks admission more than 3 or 10 years after the relevant departure or removal, the alien is not inadmissible under [section 1182(a)(9)(B)]*** based on the period of unlawful presence preceding the departure or removal because the statutory 3-year or 10-year period after that departure or removal has ended.

*Id.* § B (emphasis added). In other words, at least in the Government's estimation, a non-citizen's presence in the United States is "immaterial" to the determination of when he is considered to have "s[ought] admission" for purposes of section 1182(a)(9)(B), even where the non-citizen's presence might be unlawful ("regardless of . . . how"). *Id.* Rather, some separate, finite action must trigger it.[18] *See M-D-C-V-*, 28 I. & N. Dec. at 23. As with section 1225(b)(2)(A), that makes sense, given the statutory phrase's present-tense construction. *Id.* In the context of section 1225(b)(2)(A), this interpretation has the added benefit of avoiding the presumptively suspect conclusion that the phrase "seeking admission" has no separate meaning or effect at all.

The absence of any suggestion by the issuing officer that Petitioner was "seeking admission" is further emphasized by the fact that she *was* deemed, at the time, "present in the

---

[18] It would seem, under the USCIS Policy Manual, that entering the country without inspection is, in and of itself, insufficient.

13

United States," Dkt. 21 at 1.[19]  As another session of this court recently explained, section 1225(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statutes.  *See Gomes v. Hyde*, 2025 WL 1869299, at *5–8 (D. Mass. July 7, 2025) (citing *Gundy v. United States*, 588 U.S. 128, 140–41 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.")).  To summarize the opinion in *Gomes*, which this Court largely adopts, section 1226 generally implements a discretionary scheme for non-citizen detention but carves out certain disfavored non-citizens whom the Government is required to detain.  *Id.* at *6 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (holding that, where "Congress has created specific exceptions" to the applicability of a statute or rule, it "proves" that the statute or rule generally applies absent those exceptions)).  One such carve-out, added only months ago by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), mandates detention for non-citizens who meet certain criminal and inadmissibility criteria.  *Id.* at *6 (citing 8 U.S.C. § 1226(c)(1)(E)).  But if, as the Government argued in *Gomes* and again now, a non-citizen's inadmissibility were alone already sufficient to mandate detention

---

[19] *See Jennings*, 583 U.S. at 289 (distinguishing non-citizens "*seeking admission* into the country" from those "*already in the country*" (emphases added)); *Leng May Ma*, 357 U.S. at 187 (distinguishing non-citizens "who have come to our shores *seeking admission*" from "those who are *within the United States* after an entry, irrespective of its legality" (emphases added)).  Purely from a plain meaning and use perspective, it is striking to observe that both the *Jennings* and *Leng May Ma* Courts, writing sixty years apart, used the language of non-citizens "seeking admission" in contradistinction to those already present in the United States.

under section 1225(b)(2)(A), then the 2025 amendment would have no effect.[20] *Id.* at *7. This is a presumptively dubious result. *Id.* (quoting, *e.g.*, *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.")). "[T]he canon against surplusage is strongest when an interpretation," such as this one, "would render superfluous another part of the same statutory scheme." *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (cited in *Gomes*, 2025 WL 1869299, at *7). This tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens. Indeed, as the Attorney General has previously decided, "section [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019).

The line historically drawn between these two sections, making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens "seeking admission into the country," whereas section 1226 governs detention of non-citizens "already in the country." *See Jennings*, 583 U.S. at 288–89 ("Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls 'within one or more . . . classes of deportable aliens.' [8 U.S.C.] § 1227(a). That includes aliens who were inadmissible at the time of entry . . . . *See* [8 U.S.C. §] 1227(a)(1). . . . Section 1226 generally governs the process of arresting and detaining that group of aliens pending

---

[20] To be particular, section 1226(c)(1)(E), as amended, mandates detention where a non-citizen "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) . . . ***and*** . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E) (emphasis added). Any of these, charged under section 1225, would require mandatory detention, if not expedited removal, absent parole. *See Matter of M-S-*, 27 I. & N. Dec. 509, 515–17 (U.S. Att'y Gen. 2019).

their removal."); *see also Rodriguez v. Bostock*, — F. Supp. 3d —, 2025 WL 1193850, at *12–16 (W.D. Wash. Apr. 24, 2025) (finding that a non-citizen apprehended from within the United States and charged with inadmissibility was necessarily detained under section 1226, rather than section 1225); *Gomes*, 2025 WL 1869299 at *5–8 (same). Indeed, this is the distinction that the Government has itself historically made. Again, while non-binding, contemporaneous, consistent interpretations of a statute by the Executive agency charged with its administration can provide useful guidance. *Loper Bright*, 603 U.S. at 385–86; *Falmouth*, 847 F.3d at 27. When promulgating the regulations implementing section 1225, mere months after its passage as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, *see* Pub. L. 104–208, 110 Stat. 3009, the Government confirmed that, "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312-01; *cf.* Dkt. 21 at 1 (alleging that Petitioner was "present in the United States").[21] As to consistency, Petitioner has pointed to three recent, albeit unpublished, decisions by the Board of Immigration Appeals, all clearly holding that the detention of a non-citizen arrested within the United States is governed under section 1226, rather than section 1225. Dkt. 27 at 19–27; *see also Rodriguez*, 2025 WL 1193850, at *5 (discussing the same B.I.A. decisions). In one example, the Board stated that it was "unaware of any precedent" that would support Respondents' position here. Dkt. 27 at 20. Given this history, the Court properly treats Respondents' assertion of a "previously 'unheralded power'" to detain non-citizens present in the United States under section 1225(b)(2)(A) with "'a

---

[21] The availability of bond is a clear reference to section 1226, since bond is unavailable to those detained under section 1225. *See Q. Li*, 29 I. & N. Dec. at 69.

measure of skepticism.'"[22]  *See W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 748 (2022) (Gorsuch, J., concurring) (quoting *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 324 (2014)).

Finally, the idea that a different detention scheme would apply to non-citizens "already in the country," *see Jennings*, 583 U.S. at 289, as compared to those "seeking admission into the country," *see id.*, is consonant with the core logic of our immigration system.  "When interpreting statutes, [courts] 'recognize that "Congress legislates against the backdrop[]" of certain unexpressed presumptions.'"  *Hewitt v. United States*, 605 U.S. —, 145 S. Ct. 2165, 2173 (2025) (quoting *Bond v. United States*, 572 U.S. 844, 857 (2014)).  Here, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'"  *Leng May Ma*, 357 U.S. at 187 (quoting *Mezei*, 345 U.S. at 212); *accord Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *cf. Thuraissigiam*, 591 U.S. at 140 (relying on the distinction articulated in *Zadvydas*).  Against this backdrop, the Court finds it particularly doubtful that Congress intended section 1225(b)(2)(A) to apply to non-citizens, like Petitioner, detained while "present in the United States," Dkt. 21 at 1.  For this reason and those stated above, the Court concludes that Petitioner was not subject to mandatory detention under section 1225(b)(2)(A) following her April 2024 encounter.

---

[22] *See* notes 9–12, *supra*, and accompanying text; *see also* Lyons Memo. at 1 ("For custody purposes, [applicants] are now treated in the same manner that 'arriving aliens' have historically been treated.").

The unlawfulness of Petitioner's detention in June 2025 is thus true twice-over. Indeed, the above reasoning only gains in weight and certainty by addition of the fact that Petitioner was not detained until more than a year after her initial encounter. At that point, it cannot be denied that she was "already in the country," *Jennings*, 583 U.S. at 289, after having "effected an entry," *Thuraissigiam*, 591 U.S. 140 (quoting *Zadvydas*, 533 U.S. at 693). Section 1225(b)(2)(A) therefore simply had no application to her case. Accordingly, the Court corrects its findings but reaches the same conclusion. Petitioner's detention was unlawful.[23]

### B. Burden

"The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (citing *Walker v. Johnston,* 312 U.S. 275, 286 (1941)). The Court previously found, and today finds again, that Petitioner has met that burden.

As to the Court's original decision, Respondents argue that, by ordering them "to produce any documents that they could locate that were issued to Petitioner concerning her detention and notice to appear," Dkt. 19 at 1, the Court impermissibly burdened Respondents with having to prove the legality of Petitioner's detention. Dkt. 20 at 12–14. The Court disagrees with this characterization. The record before the Court at the hearing did not support the legality of detention, a conclusion reached again today with no suggestion of an inadequate record. Giving Respondents an opportunity to augment that record—apparently already complete—was not a burden but an opportunity. The Court recognizes that it ruled before receiving additional briefing

---

[23] Since there is no indication or present assertion that Petitioner is subject to detention under section 1226, the Court sees no reason to consider that basis. *Cf. Gomes*, 2025 WL 1869299, at *8–9 (ordering a bond hearing under section 1226 where the petitioner was initially arrested on a warrant under section 1226 and thus was colorably detained under that section).

18

from the parties, Dkt. 25 at 14 n.22, which may very well have been helpful to clarify the issues and avoid confusion.

Nevertheless, today's decision confirms that Petitioner has met her burden. The April 2024 Notice to Appear and Order of Release on Recognizance demonstrate why Petitioner cannot be detained under section 1225(b)(2)(A). Respondents have not failed to prove their authority. Rather, the Court simply finds that they lack that authority.

### C.      Conditions for Release

Finally, Respondents further argue that the court "fail[ed] to recognize the distinction between immigration removal proceedings and immigration bond hearings," Dkt. 25 at 2, by ordering that Petitioner be released "with no additional conditions beyond those imposed by the immigration judge at the June 3, 2025, hearing." Rather, the Court merely sought to make clear that Petitioner was to be restored to the state of freedom she enjoyed immediately following the June 3, 2025 hearing, just prior to her arrest.

### III.    Conclusion

For the reasons stated herein, the Court amends its findings. Respondents' motion for reconsideration is otherwise DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  July 24, 2025                                             Judge, United States District Court